

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0599-15

---

### THE STATE OF TEXAS

**v.**

### MARK TWAIN SIMPSON, Appellee

---

### ON APPELLEE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIFTH COURT OF APPEALS
### DALLAS COUNTY

---

NEWELL, J., delivered the opinion of the Court in which KELLER, P.J., JOHNSON, KEASLER, HERVEY, ALCALA, RICHARDSON, and YEARY, JJ., joined. MEYERS, J., dissented.

Mark Twain Simpson entered an open plea of guilty to second-degree felony robbery and true to an enhancement provision alleging one prior conviction for aggravated robbery. The trial court found Simpson guilty, and, after finding the allegations in the enhancement paragraph true, sentenced him to twenty-five years' confinement. Simpson filed a motion for new trial, alleging that his sentence constituted a grossly disproportionate punishment. The trial court granted a new

punishment trial. On the State's appeal, the court of appeals held that the record evidence did not substantiate Simpson's claim and vacated the trial court's order. *State v. Simpson*, No. 05-14-00618-CR, 2015 WL 1811862 (Tex. App.—Dallas Apr. 20, 2015) (not designated for publication).

We granted review to decide whether the court of appeals applied the proper standard of review under *State v. Thomas* and *State v. Herndon*. Simpson argues that the court of appeals did not adequately defer to the trial court on the question of whether he presented evidence to substantiate his legal claim that his sentence was grossly disproportionate under the Eighth Amendment. However, even under an abuse-of-discretion standard, the trial court acted without reference to guiding rules and principles when it granted a new trial as to punishment on the basis that Simpson's sentence was grossly disproportionate to the crime he committed. Consequently, we will affirm the judgment of the court of appeals.

## *Background*

The State charged Simpson with robbery for stealing a PlayStation and causing bodily injury to its owner, Vidal Gilbert. The robbery was the work of three men: Simpson, "Zelaya," who pleaded guilty and received probation, and Joseph Aguilar, who remained at large at the time of trial. Simpson pleaded guilty to the robbery, and true to an enhancement paragraph that alleged a 1984 conviction for

aggravated robbery with a deadly weapon.

According to the arrest affidavit, Gilbert Vidal walked out of the bathroom where he had just showered and saw Zelaya, his friend, and Aguilar, whom he did not know, stealing his PlayStation. The men ran out of the residence to a car in which Simpson was waiting. Vidal followed and reached into the car to retrieve his game console. Zelaya told Simpson to shoot Vidal, which Simpson threatened to do even though he did not have a gun. Meanwhile, Aguilar started punching Vidal and Vidal backed away allowing the three men to drive off. Simpson pawned the PlayStation within the hour for 80 dollars. Vidal identified Simpson as the driver who threatened to shoot him.

At the punishment hearing, Simpson testified that he was merely the getaway driver and did not cause bodily injury to the victim. He admitted that he had sixteen prior convictions for aggravated robbery and one for burglary of a vehicle, but noted that they were all committed in a "span of about a month" when he was a teenager. He received a twenty-five year sentence for the robberies and a ten-year sentence for the burglary. He was released on parole in 1999, but that parole was revoked and he was imprisoned again until 2005. In 2012, he was arrested for theft and forgery. He was convicted of, and served jail time for, the theft charge, and the forgery charge remained pending. Simpson's mother also testified at the

punishment hearing that she and her husband were dependent upon Simpson due to their poor health.

Simpson's defense attorney sought deferred adjudication in light of Simpson's minor role in the instant crime. The State agreed that Simpson's role was small, but asked for a prison sentence in light of Simpson's criminal history. Faced with a punishment range of five to ninety-nine years because of the enhancement paragraph, the trial court assessed a twenty-five-year sentence.

Simpson filed a motion for new trial the next day, alleging that the sentence violated "the proportionality tenant of the Eighth Amendment" to the United States Constitution. Specifically, he noted that his participation in the offense was limited to driving the getaway car and "selling a stolen PlayStation," which he characterized as "a snap misjudgment" that was far afield from "traditional notions" of aggravated crimes. He also argued that his sentence was disproportionate in light of his co-defendant's probated sentence and the probated or deferred sentences imposed on "many defendants."

The trial court held a hearing on the motion for new trial.[1] At the hearing, the trial court asked whether Zelaya, the co-defendant who received a probated

---

[1] A defendant is not entitled to a hearing on a motion for new trial on matters raised in the motion that are determinable from the record. *See Lucero v. State*, 246 S.W.3d 86, 94 (Tex. Crim. App. 2008). However, the State acquiesced to the hearing by failing to object. *See State v. Moore*, 225 S.W.3d 556, 570 (Tex. Crim. App. 2007) (noting that State's failure to object to untimely amendment to motion for new trial merely prevented the State from raising that claim on appeal).

sentence, had any prior convictions. Both parties informed the trial court that he did not have a prior criminal record, though he "was the one who actually went inside the property." The State argued that the trial court could not grant a new trial solely because it believed the defendant had "received a raw deal." Rather, the defendant was required to show that the "first proceeding was not in accordance with the law." The State went on to argue that the first sentencing hearing was conducted in accordance with the law, and Simpson's counsel agreed, with the caveat that the sentence itself was grossly disproportionate.

The trial court also heard from Simpson's sister, Alecia, who did not testify at the original punishment hearing even though she was present, and Simpson's mother, who had testified at the original punishment hearing. These witnesses provided no testimony concerning Simpson's gross-disproportionality claim. Instead, they were called because Simpson wanted to address an issue involving his drug usage.

Alecia testified that her brother had an accomplice during the crime spree that he engaged in when he was seventeen. According to Alecia, that accomplice was twice Simpson's age and was "killed by bounty hunters" before he could be prosecuted. Turning to current circumstances, she said that her brother had last been working at Skinner Masonry and that, when she went to pick up his last check, the

manager had made it clear he wanted Simpson back "because they had a big project out there and they liked his work." She stated that he had been, and could remain, clean with the full-time Skinner Masonry job and that he would make better decisions if he got some drug treatment. She noted that her brother helped her raise her three kids.

Simpson's mother, Frankie, testified at greater length than she did at the original punishment hearing. She provided additional information about her own and her husband's health problems. She said they both benefitted, emotionally and physically, from having Simpson around. She acknowledged that Simpson did need help making better decisions, but they and their church community and friends were all willing to help him and to find any outside help he needed.

Simpson's attorney argued that what his client needed most was drug treatment. He asked for a stair-step process–possible additional incarceration, SAFPP, then release under strict supervision with a curfew. Addressing Simpson's criminal history, the attorney said, "Certainly, he's run up a lot of cases in a short period of time, but he's not the person that he was back then and I'm hopeful that the Court can see that based on the testimony of family."

The State argued that the motion-for-new-trial hearing was not a new punishment hearing. According to the State, the trial court was not authorized to

hold a new punishment hearing unless there was some showing that the original punishment hearing was not authorized by law. The State asked the trial court to deny the motion for new trial because the sentence was not grossly disproportionate under the Eighth Amendment.

The trial court granted the motion for a new trial as to punishment, and the State appealed. On the State's appeal, the Dallas Court of Appeals vacated the trial court's order and reinstated the original judgment. Citing the *Herndon* standard, the Dallas court held that Simpson articulated a valid legal claim, but did not substantiate it. *Simpson*, 2015 WL 1811862, at *3. We granted review to decide whether the court of appeals erred in finding Simpson's disproportionate sentence claim unsubstantiated.

### *Standard of Review*

The standard of review when a trial court grants a motion for a new trial is abuse of discretion. *State v. Thomas*, 428 S.W.3d 99, 103 (Tex. Crim. App. 2014). The test for abuse of discretion is not whether, in the opinion of the appellate court, the facts present a suitable case for the trial court's action, but rather, whether the trial court acted without reference to any guiding rules or principles. *Id.* The bare fact that a trial court may decide a matter differently from an appellate court does not demonstrate an abuse of discretion. *Id.* at 103-04. Appellate courts view the

evidence in the light most favorable to the trial court's ruling, defer to the court's credibility choices, and assume that all reasonable fact findings in support of the ruling have been made. *Id.* at 104.

The trial court cannot grant a new trial just because it personally believes that the defendant is innocent or received a raw deal. *Id.* Nor may a trial court grant a new punishment trial based only on second thoughts about the sentence that it imposed upon a defendant. *Id.* at 107. In the absence of a valid legal claim of any sort to base a new punishment trial on, a court of appeals properly reverses a trial court's grant of a new trial. On the other hand, a trial court does not generally abuse its discretion in granting a motion for new trial if the defendant: (1) articulates a valid legal claim in his motion for new trial; (2) produces evidence or points to evidence in the trial record that substantiates his legal claim; and (3) shows prejudice to his substantial rights under the standards in Rule 44.2 of the Texas Rules of Appellate Procedure. *State v. Herndon*, 215 S.W.3d 901, 909 (Tex. Crim. App. 2007). An appellate court may reverse a trial court's decision on a motion for new trial when the trial court's decision is so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007).

*Analysis*

An allegation of disproportionate punishment is a valid legal claim. The concept of proportionality is embodied in the Constitution's ban on cruel and unusual punishment and requires that punishment be graduated and proportioned to the offense. U.S. CONST. amend VIII. But, this is a narrow principle that does not require strict proportionality between the crime and the sentence. *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring). Rather, it forbids only extreme sentences that are "grossly disproportionate" to the crime. *Ewing v. California*, 538 U.S. 11, 23 (2003) (plurality opinion). While the United States Supreme Court has acknowledged the lack of clarity in its precedent regarding what factors may indicate gross disproportionality, it has nevertheless emphasized that a sentence is grossly disproportionate to the crime only in the exceedingly rare or extreme case. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003). Moreover, this Court has traditionally held that punishment assessed within the statutory limits, including punishment enhanced pursuant to a habitual-offender statute, is not excessive, cruel, or unusual. *See Ex parte Chavez*, 213 S.W.3d 320, 323-24 (Tex. Crim. App. 2006).

To determine whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime, a court must judge the severity of the sentence in light of the harm caused or threatened to the victim, the

culpability of the offender, and the offender's prior adjudicated and unadjudicated offenses. *Graham v. Florida*, 560 U.S. 48, 60 (2010); *see also McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992) (noting that the Supreme Court's holding in *Harmelin v. Michigan*, 501 U.S. 957 (1991) modified the gross-disproportionality test previously set out in *Solem v. Helm*, 463 U.S. 277 (1983)). In the rare case in which this threshold comparison leads to an inference of gross disproportionality, the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. *Graham*, 560 U.S. at 60. If this comparative analysis validates an initial judgment that the sentence is grossly disproportionate, the sentence is cruel and unusual. *Id.*

Only twice has the Supreme Court held that a non-capital sentence imposed on an adult was constitutionally disproportionate. *United States v. Farley*, 607 F.3d 1294 (11th Cir. 2010) (singling out *Weems v. United States*, 217 U.S. 349 (1910) (fifteen years punishment in a prison camp grossly disproportionate to crime of falsifying a public record) and *Solem v. Helm*, 463 U.S. 277 (1983) (life imprisonment without parole grossly disproportionate sentence for crime of uttering a no-account check for $100)). And it has rejected a disproportionality attack on a sentence of twenty-five years to life imposed under California's "Three Strikes and You're Out" law,

brought by a defendant who merely stole three golf clubs. *Ewing*, 538 U.S. at 29-30. The Supreme Court directly addressed felony recidivism in *Ewing*, holding that, "[i]n weighing the gravity of Ewing's offense, we must place on the scales not only his current felony, but also his long history of felony recidivism. Any other approach would fail to accord proper deference to the policy judgments that find expression in the legislature's choice of sanctions." *Id*. at 29. The court of appeals correctly held that, in light of Simpson's role in the robbery and his significant prior adjudicated and unadjudicated offenses, his twenty-five-year sentence is not one of those "rare" cases where gross disproportionality can be inferred even when viewing the evidence in the light most favorable to the trial court's ruling. *Simpson*, 2015 WL 1811862, at *3.

Simpson's sentence fell well within the statutory range of five to ninety-nine years or life. Accordingly, there is no reason to compare his sentence to sentences imposed on others–including the probated sentence of the main actor in this case. *Graham*, 560 U.S. at 60; *McGruder*, 954 F.2d at 316. Certainly, where there cannot be even an inference that the sentence was disproportionate to the crime, it cannot be said that the Eighth Amendment claim was "substantiated." The trial court's decision–to the degree that it found the constitutional claim substantiated–lies outside that zone within which reasonable persons might disagree. Appellee

presented evidence that his sentence was too harsh, not that it was unconstitutional. *See State v. Zalman*, 400 S.W.3d 590 (Tex. Crim. App. 2013) (trial court abused discretion by granting motion for new trial on evidentiary issues when the only ground pled within the thirty-day limit was that the verdict was against the law and evidence).

Here, Simpson sought to use an Eighth Amendment claim to develop additional evidence relevant to sentencing that was not introduced at the trial court's punishment hearing, even though it was available to him. As we made clear in *State v. Thomas*, even when the trial court assesses the sentence, it abuses its discretion by granting a motion for new trial without requiring a showing that the original punishment hearing was seriously flawed. 428 S.W.3d at 107. In *Thomas*, the absence of a valid legal claim was fatal to the propriety of the trial court's grant of a new trial on punishment; the record reflected that the trial court acted merely on second thoughts about the punishment that it had originally imposed. *Id.*

In this case, Simpson articulated a valid legal claim in his motion for new trial, but he did not produce evidence or point to evidence existing in the record that substantiated this legal claim. The evidence adduced at the hearing on the motion for new trial–evidence about Simpson's minimal role in the offense, the age and circumstances of the prior offenses, his need for drug treatment, his

employment–was undoubtedly relevant to the trial court's normative punishment decision. It did not, however, substantiate Appellee's legal claim that his sentence was unconstitutional. *Zalman*, 400 S.W.3d at 594-95 ("Although *Herndon* does not explicitly say that the evidence presented at the trial must support the same claim that was pled, to hold otherwise would defeat the notice requirements of the motion."); *see also State v. Stewart*, 282 S.W.3d 729 (Tex. App.— Austin 2009, no pet.) (noting that the defendant had not substantiated a claim that his sentence was grossly disproportionate under the Eighth Amendment). To the degree that there was additional evidence that could have persuaded the trial court to assess a lesser sentence, it was incumbent upon Simpson to present that evidence during the punishment hearing, not at a subsequent hearing on a motion for new trial.[2] As the court of appeals correctly noted, Simpson was not required to establish reversible error as a matter of law. But, the evidence he presented at the hearing on the motion for new trial did not substantiate a claim that his first punishment hearing was "seriously flawed" under the legal claim he advanced. *Herndon*, 215 S.W.3d 909.

We affirm the judgment of the court of appeals.

Delivered: April 27, 2016
Publish

---

[2] As we noted in *Thomas*, the failure to call witnesses may provide a basis for an ineffective assistance claim. *Thomas*, 428 S.W.3d at 106. However, Simpson did not base his motion for new trial upon a legal claim of ineffective assistance of counsel.