

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-18-00284-CR

---

LORENA MARTINEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 100th District Court
Carson County, Texas
Trial Court No. 5641; Honorable Stuart Messer, Presiding

---

October 22, 2019

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

In 2014, Appellant, Lorena Martinez, pleaded guilty to the first-degree felony offense of possession of a controlled substance, methamphetamine.[1]  Pursuant to an agreed plea recommendation, she was placed on deferred adjudication community supervision for a term of eight years and assessed a fine of $8,000.  In 2018, the State moved to adjudicate Appellant guilty and revoke her community supervision for violating

---

[1] See Tex. Health & Safety Code Ann. § 481.115 (West 2017).

certain conditions by which she was bound. After a hearing at which Appellant pleaded "not true" to each of the State's allegations, the trial court found sufficient proof establishing two of the State's allegations whereupon it revoked her deferred adjudication, adjudicated her guilty as charged, and sentenced her to imprisonment for a term of thirty-five years. Upon adjudication, the trial court ordered that "whatever is remaining" of the fine, court costs, and restitution, be included in the judgment.

Appellant now appeals, arguing through two issues that: (1) the evidence was insufficient to support the grounds on which her community supervision was revoked; and (2) her thirty-five-year sentence was disproportionate to the gravity of her offense. We affirm the judgment of the trial court.

BACKGROUND

Appellant was placed on deferred adjudication community supervision for a period of eight years after she pleaded guilty to the first-degree felony offense of possession of methamphetamine in an amount of 200 grams or more but less than 400 grams. Appellant's community supervision was subject to several terms and conditions, including a requirement that she report to her community supervision officer every month and that she pay certain fines, fees, and costs on a monthly basis. In 2018, the State filed a motion to adjudicate Appellant's guilt, alleging Appellant violated several terms and conditions of her community supervision.

At the hearing on the State's motion, two community supervision officers, Carol Holcomb and Meghan Gribble, testified. Appellant also testified. The witnesses testified to the requirements of Appellant's community supervision and to Appellant's

2

understanding of those requirements. They also testified to Appellant's failure to report as required and to her failure to pay court-ordered fees or file a statement of inability to pay those fees for the months alleged.

After hearing the evidence, the trial court expressly found both Holcomb and Gribble to be credible and Appellant not to be credible. Accordingly, based on the testimony before it and its credibility determinations, the trial court found the evidence sufficient to support revocation of Appellant's community supervision with regard to two of the State's allegations and sentenced Appellant as noted.

### STANDARD OF REVIEW

When reviewing an order revoking community supervision imposed under an order of deferred adjudication, the sole question before this court is whether the trial court abused its discretion. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013). In a revocation proceeding, the State must prove by a "preponderance of the evidence" that the defendant violated a condition of community supervision as alleged in the motion to revoke. *Cobb v. State,* 851 S.W.2d 871, 874 (Tex. Crim. App. 1993). In a revocation context, a "preponderance of the evidence" means "that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his [community supervision]." *Hacker,* 389 S.W.3d at 865 (citing *Rickels v. State,* 202 S.W.3d 759, 764 (Tex. Crim. App. 2006)).

A trial court abuses its discretion in revoking community supervision if, as to every ground alleged, the State fails to meet its burden of proof. *Cardona v. State,* 665 S.W.2d 492, 494 (Tex. Crim. App. 1984). The finding of a single violation of community

3

supervision is sufficient to support revocation. *Garcia v. State,* 387 S.W.3d 20, 26 (Tex. Crim. App. 2012); *Harvey v. State,* 07-18-00446-CR, 2019 Tex. App. LEXIS 3821, at *5 (Tex. App.—Amarillo May 10, 2019, pet. ref'd) (mem. op., not designated for publication). In determining the sufficiency of the evidence to sustain a revocation, we view the evidence in the light most favorable to the trial court's ruling. *Jones v. State,* 589 S.W.2d 419, 421 (Tex. Crim. App. 1979).

### SUFFICIENCY OF THE EVIDENCE

In her first issue, Appellant addresses the sufficiency of the evidence supporting the grounds on which the trial court revoked her deferred adjudication community supervision. In her brief, Appellant concedes the trial court did not abuse its discretion in finding she violated at least two of the terms of her community supervision. We agree.

Holcomb and Gribble testified they were community supervision officers for Appellant. Holcomb testified to the conditions by which Appellant was bound and to Appellant's understanding of those conditions. Gribble testified Appellant failed to properly report to her as required and failed to pay required fees or file the appropriate paperwork indicating an inability to pay. Gribble told the court Appellant "never reported to our Department . . ." and that she moved from Texas to New Mexico but failed to notify or report by mail as required. According to Gribble, the department in New Mexico told her Appellant failed to report in person to their department for the months of December 2017 and January 2018. Gribble also told the court Appellant "never paid her Court-Ordered fees" and the department never received a financial statement from Appellant explaining why she was unable to make the required payments. Gribble opined that Appellant should not continue on community supervision because "[b]ased on her

4

behavior and information we have received from New Mexico, her criminal behavior has not changed."

When Appellant testified, she expressed her desire to remain on community supervision in Texas. While Appellant pleaded "not true" to the State's allegations, she nevertheless testified to her failure to comply with certain conditions and terms of her community supervision. During her testimony, she admitted she did not report to the Carson County Community Supervision Department "because I guess it was a form of miscommunication." Appellant also admitted she did not pay the required fees, despite the fact she had received a tax refund. She later said, "I do accept—I am guilty for not checking in and not paying the State of Texas because it was me misunderstanding." She explained that she thought that when her supervision was transferred to New Mexico, she was only required to pay the fees imposed there. However, Gribble told the court Appellant called her about a letter she received regarding her failure to report and pay. Appellant acknowledged receipt of that letter but said the phone call addressed only a fee that she did pay.[2]

Viewing the evidence in the requisite light, we find the trial court did not abuse its discretion in determining that the evidence was sufficient to find Appellant had violated one or more of the conditions of her deferred adjudication community supervision. Accordingly, we overrule Appellant's first issue.

---

[2] At the conclusion of the hearing, the trial court explicitly found Appellant had the ability to pay the required fees.

### DISPROPORTIONATE SENTENCE

Through her second issue, Appellant argues the trial court abused its discretion by assessing a sentence that was unconstitutionally excessive because the thirty-five-year sentence was "grossly disproportionate" to the offense she committed. The State responds that the sentence was within the applicable statutory range and was not grossly disproportionate to Appellant's offense. While we agree with the State, we also find Appellant did not preserve this error, if any.

Appellant did not raise this complaint before the trial court when sentence was pronounced or through a motion for new trial. *See Curry v. State*, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995) (en banc) (concluding that appellant failed to preserve argument that sentence was cruel and unusual by failing to object at trial); *Jones v. State*, No. 07-17-00055-CR, 2017 Tex. App. LEXIS 8438, at *1–2 (Tex. App.—Amarillo Sept. 5, 2017, no pet.) (per curiam) (mem. op., not designated for publication) (holding that appellant forfeited her complaint about her sentence being excessive when she did not raise it with the trial court). Because error was not preserved, Appellant has forfeited her complaint.

Furthermore, even if we were to review Appellant's complaint, our evaluation of a challenge to the disproportionality of imprisonment imposed in an individual case based on all its circumstances would start with an assessment of the gravity of the offense as compared with the severity of the sentence. *Noyes v. State*, No. 07-16-00229-CR, 2018 Tex. App. LEXIS 3572, at *6 (Tex. App.—Amarillo May 21, 2018, no pet.) (mem. op., not designated for publication) (citing *Graham v. Florida,* 560 U.S. 48, 60, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010)). In making our determination whether a sentence is grossly disproportionate for a particular defendant's crime, we would consider the severity of the

6

sentence "in light of the harm caused or threatened to the victim, the culpability of the offense, and the offender's prior adjudicated and unadjudicated offenses." *State v. Simpson,* 488 S.W.3d 318, 323 (Tex. Crim. App. 2016) (citing *Graham,* 560 U.S. at 60). It is only if we are able to infer a sentence was grossly disproportionate to an offense that we would compare Appellant's sentence with the sentences received for similar crimes in this jurisdiction or sentences received in other jurisdictions. *Winchester v. State*, 246 S.W.3d 386, 388 (Tex. App.—Amarillo 2008, pet. ref'd). Typically, a sentence within the statutory range of punishment for an offense is not excessive, cruel, or unusual punishment. *Id.* at 389.

Here, we find Appellant's thirty-five-year sentence was not grossly disproportionate to her offense. Appellant pleaded guilty to a first-degree felony offense of possession of methamphetamine. Thus, the potential range of punishment for the offense was imprisonment for life or for any term of not more than ninety-nine years or less than five years. TEX. PENAL CODE ANN. § 12.32(a). Further, an individual found guilty of a first-degree felony offense may also be punished by a fine not to exceed $10,000. TEX. PENAL CODE ANN. § 12.32(b).

Appellant's sentence fell within the statutory range of five to ninety-nine years of imprisonment. *See* TEX. PENAL CODE ANN. § 12.32(a) (providing punishment for first degree offense). Additionally, Appellant pleaded guilty to possession of a large amount of methamphetamine—over 200 grams, but less than 400 grams. Our State Legislature has determined that the harm to victims and to our society as a whole stemming from distribution of methamphetamine to be such as to warrant classification of such offenses as first degree felonies, near the most serious of crimes. *Brooks v. State,* No. 07-18-

00019-CR, 2019 Tex. App. LEXIS 7621, at *6 (Tex. App.—Amarillo Aug. 23, 2019, no pet.) (mem. op., not designated for publication).

While Appellant acknowledges on appeal that her possession offense is one of a serious nature, she nevertheless maintains her sentence is grossly disproportionate to the offense to which she pleaded guilty for several reasons. She argues she had no prior criminal history and that the methamphetamine for which she pleaded guilty to possessing did not belong to her. She also points to the fact that she served nearly four years of her community supervision before a report of violation was filed, and she did not engage in any new criminal activity during her community supervision. However, Gribble told the court she received reports from the department in New Mexico that, during her supervision, Appellant "had used marijuana on more than one occasion." Appellant told the court she complied with most of the terms and conditions of her community supervision and she was forthcoming about her misunderstanding of those conditions; however, Appellant does not explain how any of these facts demonstrate an unconstitutionally gross disparity between her sentence and the first-degree felony offense to which she originally pleaded guilty. *See Simpson,* 488 S.W.3d at 323 (setting forth considerations for determination whether sentence for terms of years is grossly disproportionate to particular defendant's crime).

Further, we note Appellant's testimony consisted mostly of excuses for her failure to comply with the mandated terms and conditions, accusations that other witnesses were lying, and inconsistent statements that the trial court explicitly found to be incredible. During her four years on community supervision, not once did Appellant abide by the conditions requiring her to report and pay her fees in Carson County. The evidence

presented to the trial court at the hearing on the State's motion does not show the thirty-five-year sentence imposed on Appellant is grossly disproportionate to the offense to which she pleaded guilty. *Simpson,* 488 S.W.3d 323.

Therefore, based upon both a lack of preservation and the lack of a substantive basis for finding Appellant's sentence to be disproportionate, we overrule Appellant's second issue.

## CONCLUSION

Having resolved each of Appellant's issues against her, we affirm the judgment of the trial court.

Patrick A. Pirtle
Justice

Do not publish.