

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00246-CR

———————————————

DELIA GONZAGA, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 371st District Court
Tarrant County, Texas
Trial Court No. 1634054D

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

### I.  Introduction

Appellant Delia Gonzaga was indicted for intentionally or knowingly causing serious bodily injury to a child by striking him with or against a hard object or surface. She ultimately pleaded guilty to the lesser offense of recklessly causing serious bodily injury to a child. After a punishment hearing, the trial court sentenced Gonzaga to ten years in prison.

On appeal, Gonzaga complains that her ten-year sentence is grossly disproportionate to her crime and therefore violates the Eighth Amendment to the United States Constitution. We affirm.

### II.  Background

Eva Andrews[1] has three children. Her youngest is Eric, born in June of 2019. Eric's older sister had attended Gonzaga's daycare until she started school. Even though Gonzaga had previously told Eva that she was not going to take newborns anymore, Gonzaga offered to take care of Eric. Eva accepted and registered Eric at the age of seven or eight weeks.

Eva made sure that Eric had supplies, including swaddles for sleeping. One day in November of 2019, Eva went to pick up Eric and—because Gonzaga was busy—

---

[1]To protect the anonymity of the child at issue, we will use aliases to refer to him and his mother. *See Wolfe v. State*, 459 S.W.3d 201, 203 n.3 (Tex. App.—Fort Worth 2015), *aff'd*, 509 S.W.3d 325 (Tex. Crim. App. 2017).

she went to take Eric out of his bouncer. But Eric's hands were effectively "handcuffed" behind his back to the bouncer—one of his hands had the imprint of the strap's buckle, and it had started to turn purple. Eva was upset and told Gonzaga that Eric should have been swaddled and not had his hands tucked in behind his back. Gonzaga just explained that she tucked his hands in so he wouldn't move and wake himself up.

On December 17, Eva dropped Eric off at daycare. While Eva was at work, Gonzaga called her and told her that Eric was shaking and crying, was in a deep sleep, and was unresponsive. Through a video app, Eva could see that Eric's ribs were "being marked in every breath," and that his arms were limp. Eva rushed to the daycare.

When Eva arrived, Eric was limp in Gonzaga's arms and was breathing rapidly. She tried to move Eric's head from side to side but could get no reaction. Eva and Eric's father (who had arrived about the same time) took Eric to the hospital. A CT scan made it clear that Eric had a brain bleed and would have to be transported to Cook Children's Hospital.

At Cook's, doctors determined that Eric had a traumatic brain injury. He also had blood behind his retinas, which is an indicator of shaken-baby syndrome. Eva knew that Eric could possibly lose his sight. Eric was monitored for two days in intensive care and then moved to a regular room. But he still was not interacting normally when he awoke. According to the ophthalmologist that Eva worked for,

Eric's brain injuries were comparable to those suffered by a baby being thrown out of a three-story window.

Eva called Gonzaga and asked what happened—did she drop Eric, did he fall? Gonzaga said that nothing had occurred—in fact, she never admitted anything to Eva. Gonzaga did, however, testify and admitted that Eric was crying and she got frustrated. She then threw him down on the changing table. When Eric was unresponsive, she grabbed him and took him to her daughter's room. Even though Gonzaga could see that Eric needed medical attention, she did not call 911.

Eric is now three years old and can walk and talk. His neurologist told Eva that Eric is in the top two percent of children who recover fully from the sort of injuries he sustained.

In her testimony, Gonzaga expressed regret for what happened to Eric. She has no criminal record and asked the trial court to probate her sentence. Several witnesses also testified as to her good character, some of whom said that they would feel comfortable leaving their own children in her care.

After hearing the evidence, the trial court sentenced Gonzaga to ten years in prison. On appeal, Gonzaga claims that this sentence violates the United States

Constitution's Eighth Amendment protection against grossly disproportionate sentencing.[2]

## III. Disproportionality Under the Eighth Amendment

Generally, a sentence within the statutory range of punishment for an offense will not be held to be cruel or unusual. *Dale v. State*, 170 S.W.3d 797, 799 (Tex. App.—Fort Worth 2005, no pet.) (citing *Jordan v. State*, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973)). Indeed, a trial court's discretion to impose any sentence within the prescribed statutory range is essentially unfettered. *Ex parte Chavez*, 213 S.W.3d 320, 323 (Tex. Crim. App. 2006). But a narrow exception to this general rule exists: the Eighth Amendment prohibits noncapital punishment within the statutory limits if the sentence is grossly disproportionate to the offense. *Graham v. Florida*, 560 U.S. 48, 59–60, 130 S. Ct. 2011, 2021–22 (2010); *Harmelin v. Michigan*, 501 U.S. 957, 997–1001, 111 S. Ct. 2680, 2702–05 (1991) (Kennedy, J., concurring in part and concurring in judgment); *State v. Simpson*, 488 S.W.3d 318, 322–23 (Tex. Crim. App. 2016). The gross-disproportionality exception occurs "only in the exceedingly rare or extreme case." *Simpson*, 488 S.W.3d at 322–23.

Texas courts have followed the Fifth Circuit's analysis for addressing Eighth Amendment proportionality complaints. *McGruder v. Puckett*, 954 F.2d 313 (5th Cir.

---

[2]Gonzaga presented this claim to the trial court in a motion for new trial, thus preserving it for appeal. *See Bolar v. State*, 625 S.W.3d 659, 665 (Tex. App.—Fort Worth 2021, no pet.).

1992); *see Hammer v. State*, 461 S.W.3d 301, 304 n.7 (Tex. App.—Fort Worth 2015, no pet.). This requires that we first compare the gravity of the offense underlying the conviction with the severity of the sentence. *McGruder*, 954 F.2d at 316. The test is whether the sentence is grossly disproportionate to the gravity of the offense upon which the sentence is based. *See Winchester v. State*, 246 S.W.3d 386, 389–90 (Tex. App.—Amarillo 2008, pet. ref'd). We consider the gravity of the offense in light of the harm caused or threatened to the victim or society and the culpability of the offender. *Solem v. Helm*, 463 U.S. 277, 291–92, 103 S. Ct. 3001, 3010–11 (1983).

In the rare case in which this threshold analysis indicates gross disproportionality, we then compare the defendant's sentence with those received by similar offenders in this jurisdiction and with those imposed for the same crime in other jurisdictions. *Simpson*, 488 S.W.3d at 323; *see also Solem*, 463 U.S. at 296–300, 103 S. Ct. at 3012–15.

## IV. Analysis

Gonzaga was convicted of recklessly causing serious bodily injury to a child. The statutory range of confinement for this second-degree felony is two to twenty years in prison. *See* Tex. Penal Code Ann. § 22.04(a)(1), (e), 12.33(a). The trial court assessed Gonzaga a sentence of ten years—the middle of the range. Causing serious bodily injury to a child is a serious offense, particularly given that the child in this case was an infant. *See Wade v. State*, No, 02-21-00206-CR, 2023 WL 1859797, at *3 (Tex. App.—Fort Worth Feb. 9, 2023, no pet.) (mem. op., not designated for publication)

6

(punching a child "is a serious offense, harming not only the victim but also society, which has a vested interest in protecting its most vulnerable members").

The trial evidence demonstrates the gravity of not only the harm inflicted on Eric, but of Gonzaga's blameworthiness as well. She threw him on the changing table with a tremendous amount of force, possibly the equivalent to throwing him out of a third-story window. Gonzaga knew Eric needed medical attention but was more concerned with protecting herself. Eric suffered a brain bleed and could have lost his sight. When confronted by Eric's mother, Gonzaga denied any culpability—only to admit it at trial.

Although Gonzaga's lack of a criminal record is a factor in her favor, we cannot say that the trial court's decision to sentence her to ten years—when twenty-year sentence was possible—gives rise to an inference of disproportionality.

Considering the gravity of the crime of causing serious bodily injury to a child, the harm caused to Eric, and Gonzaga's culpability, we cannot say that a ten-year sentence is grossly disproportionate. And because no gross disproportionality exists, we need not evaluate the sentences under the two remaining *Solem* factors. *See Bolar*, 625 S.W.3d at 666. We overrule Gonzaga's sole point.

## V. Conclusion

Having overruled Gonzaga's punishment-disproportionality claim, we affirm the judgment of the trial court.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  June 29, 2023