**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-23-00104-CR**
_____

**FRANCISCO SERRATA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 359th District Court**
**Montgomery County, Texas**
**Trial Cause No. 21-09-13188-CR**

**MEMORANDUM OPINION**

In his sole issue, Appellant Francisco Serrata[1] complains his life sentence for bail jumping and failure to appear is grossly disproportionate and violates the Texas Constitution's prohibition against cruel or unusual punishment. *See* Tex. Const. art. I § 13. For the reasons explained below, we affirm the trial court's judgment.

---

[1] The record also refers to Appellant as Frank Serrata.

## BACKGROUND

A grand jury indicted Serrata for bail jumping and failure to appear, a third-degree felony. *See* Tex. Penal Code Ann. § 38.10(a), (f). The indictment included two enhancement paragraphs, alleging Serrata had prior felony consecutive convictions for burglary of a habitation. Serrata entered an open plea of "[g]uilty" to the offense and pleaded "[t]rue" to the two enhancement paragraphs, subjecting him to punishment for life or a term of not more than 99 years or less than 25 years as a habitual offender. *See id.* § 12.42(d). As part of the plea agreement, the State agreed to dismiss Serrata's pending case for burglary of a habitation after the trial court assessed punishment. Serrata stipulated to having ten prior felony convictions.

The trial court conducted a punishment hearing. Diane[2] testified that she was at home when she saw a man, who she identified as Serrata, park his car in her neighbor's driveway, walk to her house, knock several times on her front door, and look in her windows. Diane testified Serrata then moved his car to the street and parked between her house and her neighbor's, which he approached in the same manner. Diane explained that after Serrata "excessively[]" knocked on her front door

---

[2] We use pseudonyms to refer to the two victims to conceal their identities. *See* Tex. Const. art I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process[.]"

2

and looked in her windows, she heard the "door kind of jiggle[]" and Serrata "trying to make friends" with her dog.

Diane testified that when Serrata opened her back door and stepped "inside the threshold[,]" she pointed her gun at him and told him to get out of her house. Diane testified that Serrata claimed he was there to wash her car or mow her lawn, and Serrata also told her he was looking for business from a local church and tried to give her a business card. Diane explained that Serrata left after she told him to leave several times, and she then called the police. Diane testified that she used her cell phone to video Serrata leaving in his car that day, and that video was published to the jury. Diane testified that as Serrata was leaving, he looked to the right down the street and made a motion in the air "as if let's go[.]" Diane explained Serrata made her feel very threatened and violated.

On the same day that Serrata entered Diane's home, a man tried to open Jane's front door and then confronted Jane at her back door. Jane testified that when she asked the man what he wanted, he responded that he was with the church and "he was there to mow some yards in the neighborhood and blow the leaves." Jane explained the man left after she told him he needed to leave. Jane could not identify Serrata as the man who confronted her. After the man left, Jane called the police. Jane explained it was hard to get in her back yard because the gate was in disrepair.

3

Officer Ralph Craig, a motorcycle officer with the city of Oak Ridge North, responded to Diane's call for a potential burglary. Craig testified that Diane described the incident and provided a description of the suspect and his car. Craig testified he received a similar report from Jane, who lived about a mile and a half from Diane, and the description of the suspect was "[a]lmost identical." Craig testified that after another officer stopped Serrata, Diane identified Serrata as the suspect and his car. Craig explained that after Serrata's arrest, the police found a "pry tool" in his car, and Craig explained the tool could be used to pry doors or windows. Craig testified that Serrata denied any intent to commit burglary and claimed he was looking for work.

Detective Sergeant Brandon Rogers with the Oak Ridge North Police Department responded to the attempted burglary at Diane's home, and he received a description of the suspect and his car and learned about another possible burglary a mile and a half away. Rogers testified Diane provided a video and still shots from the video that she took of the suspect. Rogers responded to the scene where Serrata was detained for a traffic stop, and Rogers recorded his audio conversation with Serrata. Rogers explained Serrata denied any intent to commit burglary, any ownership or knowledge of the pry tool found in the car, and ownership of the car. Rogers sensed Serrata was "being untruthful" and described Serrata's posture as

4

"defeated[,]" which Rogers attributed to Serrata's dishonesty. Rogers testified that Serrata admitted that entering the backyard was wrong.

Beth Hoover, the Court Liaison Officer who prepared Serrata's pre-sentence report, testified that in preparing the report she spoke with Serrata, who admitted he was "100-percent guilty of bail jumping[,]" but denied having burglarized a habitation. Hoover testified that Serrata acknowledged his multiple arrests but minimized his criminal history. According to Hoover, Serrata had nineteen felony arrests and twelve misdemeanor arrests in nine different Texas counties. Hoover also described Serrata's non-compliance with his bond conditions during the pendency of this case, and she explained that he absconded from bond supervision after his bond was revoked. Hoover recommended that Serrata be sentenced to prison due to his non-compliance with the court's obligations and his criminal history.

Elizabeth Loyd, Serrata's bond supervision officer, described Serrata's bond conditions and his violations of those conditions, including driving through Diane's subdivision. Loyd testified Serrata absconded from supervision.

Agustin Gutierrez, a licensed professional counselor, testified that he performed a psychosocial evaluation on Serrata and diagnosed him with Major Depressive Disorder and a history of alcohol abuse, cannabis use, substance abuse disorder, conduct disorder, and unspecified impulsive control. Gutierrez explained that after reviewing Serrata's criminal history and mental state, he recommended

5

that if Serrata were placed on community supervision, he should attend individual and group therapy and aftercare, including medication, a vocational training program, and submit to polygraph testing. Gutierrez did not recommend community supervision or incarceration but deferred to the court to decide punishment. Gutierrez testified he was aware of Serrata's prior failures in complying with the conditions of probation and his bond, and he explained that with active participation and proper treatment, the probability is good that Serrata will complete probation.

Miriam DaSilva, Serrata's girlfriend, described Serrata as a "hard worker[,]" and "a very good person." She believed Serrata would comply with probation conditions if given another opportunity because he turned himself in after absconding and had changed. DaSilva testified that Serrata had never threatened her and that she was not afraid of him, but on cross-examination, DaSilva acknowledged that Serrata threatened to burn down her house if she told probation where he was.

Ester Stephens, Serrata's sister, described her family, which included ten children and a father who worked but never brought money home. Stephens testified their father was an absent parent who was physically abusive and did a "lot of drinking[]" and "womanizing[.]" Stephens explained that Serrata was affected when one of their brothers was killed in a car accident because they were very close. Stephens testified that after their brother's death, Serrata was angry, changed a lot, and placed in special education classes. Stephens testified that she knew about

6

Serrata's criminal history, and she believed it was a "waste of time and money to just put him in prison for the rest of his life[,]" because he needs psychiatric help.

After considering the punishment evidence, including ten felony convictions, seven misdemeanor convictions, probation revocations, and bond violations, the trial court found the two enhancement paragraphs to be "true" and sentenced Serrata to life in prison. *See* Tex. Penal Code Ann. §§ 12.42(d), 38.10(f). Serrata objected that his life sentence was cruel and unusual punishment under the Eighth and Fourteenth Amendments of the United States Constitution. *See* U.S. CONST. amends. VIII, XIV.

Serrata filed a Motion for New Trial, claiming his punishment violated the Texas and United States Constitutions. The trial court conducted a hearing and considered Serrata's evidence showing all the Montgomery County bail jumping and failure to appear cases in the past ten years and the defendants' prison terms in those cases. Serrata's counsel argued that Serrata's life sentence was grossly disproportionate and unusual compared to the other Montgomery County cases. The State argued that it did not know the defendants' criminal histories in the cases that Serrata referenced, but here, the trial court considered Serrata's significant criminal history and his prior judgments, which showed he had been sentenced to an approximate total of 120 years. The State also noted the trial court considered evidence that Serrata cut off two GPS monitors and absconded for "quite some time."

7

The trial court denied Serrata's Motion for New Trial. The trial court noted the sentencing evidence showed Serrata had nineteen arrests for felonies with ten convictions as well as a pending burglary of habitation charge when he pleaded guilty to bail jumping and failure to appear. The trial court added that Serrata has seven misdemeanor convictions and had received many "second chances" after his convictions, including several chances with probation, which he violated. The trial court explained that Serrata was on bond for burglary of a habitation, which he violated several times and despite the trial court giving him a "third chance and a new bond[,]" Serrata "was gone[]" for "a little over a year[]" and out of second chances.

## ANALYSIS

In his sole issue, Serrata argues his life sentence for bail jumping and failure to appear is cruel or unusual in violation of the Texas Constitution. *See* Tex. Const. art. I § 13. In reviewing a trial court's sentencing determination, we afford the trial court "a great deal of discretion[.]" *Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984). The Texas Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted." Tex. Const. art. I § 13. Generally, a sentence that is within the range of punishment established by the Legislature is not excessive, cruel, or unusual, and will not be disturbed on appeal. *State v. Simpson*, 488 S.W.3d 318, 323 (Tex. Crim. App. 2016);

8

*Gerhardt v. State*, 935 S.W.2d 192, 196 (Tex. App.—Beaumont 1996, no pet.) (citing *Jackson*, 680 S.W.2d at 814). An appellate court rarely considers a punishment within the statutory range for the offense excessive, unconstitutionally cruel, or unusual under either the Texas or the United States Constitution. *See Kirk v. State*, 949 S.W.2d 769, 772 (Tex. App.—Dallas 1997, pet. ref'd); *see also Jackson v. State*, 989 S.W.2d 842, 846 (Tex. App.—Texarkana 1999, no pet.). Punishment assessed within the statutory limits, including punishment enhanced pursuant to a habitual-offender statute, is not excessive, cruel, or unusual, and we must weigh the defendant's long history of felony recidivism. *Simpson*, 488 S.W.3d at 323 (citing *Ewing v. California*, 538 U.S. 11, 29-30 (2003) (plurality opinion); *Ex parte Chavez*, 213 S.W.3d 320, 323-24 (Tex Crim. App. 2006)). "'[T]he State's interest is not merely punishing the offense of conviction[;'] it also has an interest 'in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law.'" *Bolar v. State*, 625 S.W.3d 659, 671 (Tex. App.—Fort Worth 2021, no pet.) (citing *Ewing*, 538 U.S. at 29). An exception to this general rule that punishment within the statutory limits is not unconstitutional is recognized when the sentence is grossly disproportionate to the offense. *Solem v. Helm*, 463 U.S. 277, 289-90 (1983); *see also Harmelin v. Michigan*, 501 U.S. 957, 1004-05 (1991) (Kennedy, J., concurring). Except for cases involving capital punishment, a successful challenge

to the proportionality of a particular sentence is exceedingly rare. *Solem*, 463 U.S. at 289-90.

To determine whether a sentence is grossly disproportionate to a particular defendant's crime, we consider (1) the severity of the offense in light of the harm caused or threatened to the victim; (2) the culpability of the defendant; and (3) the defendant's prior adjudicated and unadjudicated offenses. *Simpson*, 488 S.W.3d at 323. In the rare case in which this threshold comparison leads to an inference of gross disproportionality, we then compare the defendant's sentence with the sentences of other offenders in Texas and with the sentences imposed for the same crime in other jurisdictions. *Id.* "If this comparative analysis validates an initial judgment that the sentence is grossly disproportionate, the sentence is cruel and unusual." *Id.*

Serrata pleaded guilty to bail jumping and failure to appear, a third-degree felony. *See* Tex. Penal Code Ann. § 38.10(a), (f). Serrata pleaded true to two enhancement paragraphs, increasing his punishment range as a habitual offender to life or for any term of not more than 99 years or less than 25 years. *See id.* § 12.42(d). Serrata's punishment of life in prison falls within the range of the statute. *See id.* While Serrata contends the offense of bail jumping and failure to appear is a non-violent victimless offense, the record shows Serrata was out on bond for burglary of a habitation when he failed to appear. Evidence presented to the trial court showed

Serrata frightened Diane when he tried to enter her home through a locked front door. Diane retrieved a gun from her bedroom and confronted Serrata as he entered her back door without her consent. Diane pointed the gun at Serrata and forced him to leave at gun point. The record also shows that Serrata stipulated to having ten prior convictions that included five convictions for burglarizing a habitation, two of which had sentences of thirty-five and fifty years in prison. Hoover testified that Serrata's criminal history also included several bond violations. The trial court noted Serrata's extensive criminal history when sentencing him to life in prison. *See Simpson*, 488 S.W.3d at 323 (stating trial court must weigh the defendant's long history of felony recidivism in assessing punishment enhanced pursuant to a habitual-offender statute); *Bolar*, 625 S.W.3d at 671 (noting State's interest to deal with repeat offender in a harsher manner because of their inability to conform with criminal laws).

On this record, we cannot say the trial court abused its discretion in assessing a life sentence, nor can we say the sentence received was grossly disproportionate to the offense Serrata committed. Serrata's sentence fell within the statutory range, and there is no reason to compare his sentence to sentences imposed on other offenders. *See Simpson*, 488 S.W.3d at 323; *see also Munoz v. State*, No. 09-19-00182-CR, 2021 WL 2345364, at *12 (Tex. App.—Beaumont June 9, 2021, pet. ref'd) (mem. op., not designated for publication); *Garcia-Martinez v. State*, No. 09-17-00395-CR,

11

2019 WL 1924240, at **4-5 (Tex. App.—Beaumont May 1, 2019, no pet.) (mem. op., not designated for publication). Even if the sentence could be considered harsh, Serrata did not present evidence that it was unconstitutional. *See Garcia-Martinez*, 2019 WL 1924240, at *5. We overrule his sole issue and affirm the trial court's judgment.

     AFFIRMED.

JAY WRIGHT<br>
Justice

Submitted on May 2, 2024
Opinion Delivered August 28, 2024
Do Not Publish

Before Golemon, C.J., Wright and Chambers, JJ.