**Opinion filed December 9, 2021**



# In The

# Eleventh Court of Appeals

_____

## No. 11-19-00403-CR

_____

## XAVIER MUSHAWN APPLIN, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 104th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 21628B**

## M E M O R A N D U M   O P I N I O N

Xavier Mushawn Applin entered an open plea of guilty to the offense of aggravated robbery involving a deadly weapon. At the end of the punishment hearing, the trial court sentenced Appellant to confinement for fifty years in the Institutional Division of the Texas Department of Criminal Justice. The trial court also made an affirmative deadly weapon finding. In a single issue, Appellant asserts that his punishment constituted cruel and unusual punishment. We affirm.

*Background Facts*

Appellant was charged by indictment with committing the murder of Chance Bonni by shooting him in the chest with a shotgun during a robbery. The second count of the indictment charged Appellant with committing the aggravated robbery of Bonni based upon the same conduct. The third count of the indictment charged Appellant with aggravated assault based upon the same conduct.

Upon Appellant's open plea of guilty to the second count of aggravated robbery, the State waived the first and third counts. Appellant executed a stipulation of evidence wherein he swore that all facts alleged in the indictment were true and correct and that he was guilty of the offense of aggravated robbery.

At the punishment hearing, the parties relied to a great extent on the Presentence Investigation (PSI). The PSI has been filed in this court in a sealed clerk's record. We will limit our discussion of its specific details to matters that were discussed at the punishment hearing. The prosecutor stated as follows during his opening statement: "This is a robbery, where a person was killed. This is a robbery, where a deadly weapon was used." The prosecutor indicated that the State agreed to waive the murder count based upon Appellant's written acknowledgement of what had occurred.

In open court, the prosecutor read the following portions of the PSI that were written by Appellant in his statement:

> Me, George Johnson, and Jonathan Williams went to the apartment, then went upstairs to the door, and I knocked. . . . The door started to open. I began to push on the door to get inside . . . and someone on the other side began to push and close the door. I pushed back. And while I pushed back, I gripped the gun, causing it to go off. The gun wasn't supposed to go off. We all got scared and ran off.

The prosecutor also referenced a portion of Appellant's statement wherein he indicated that he and his companions went to Bonni's house because they thought

2

there was money and marihuana there for them to steal. The prosecutor further asserted that Appellant consciously took a gun to Bonni's apartment in case someone was there and that Appellant ended up shooting Bonni through the front door as Bonni attempted to close it when the intruders tried to enter.

*Analysis*

In his sole issue, Appellant contends that the sentence was excessive and violated his right under the Eighth Amendment to be free from cruel and unusual punishment. *See* U.S. CONST. amend. VIII. Appellant contends that his sentence of imprisonment is "unjust" and "grossly disproportionate" because of the following reasons: Appellant was only seventeen years old at the time of the offense; he had no criminal history before the offense; he had no experience with firearms prior to the offense (which Appellant claims caused the gun to accidentally discharge); Appellant was not the leader or mastermind behind the plan; and one of Appellant's accomplices, who was only fifteen years old at the time of the offense, only received probation for his role in the offense.

To preserve a complaint that a sentence constitutes cruel and unusual punishment, a defendant must first raise the issue in the trial court. TEX. R. APP. P. 33.1(a); *Burt v. State*, 396 S.W.3d 574, 577 (Tex. Crim. App. 2013) ("In some instances, an appellant may preserve a sentencing issue by raising it in a motion for new trial."). Appellant acknowledges on appeal that he did not object to his sentence in the trial court, either at the time of disposition or in a posttrial motion. Specifically, Appellant did not object, under constitutional or other grounds, that the sentence was cruel, unusual, excessive, or disproportionate to sentences that other individuals received for the same offense. Therefore, Appellant failed to preserve his complaint for our review. *See Curry v. State*, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995) (failing to object at trial waives a claim of cruel and unusual punishment under the United States Constitution).

3

But, even if Appellant had preserved the issue, his sentence does not constitute cruel and unusual punishment. When we review a trial court's sentencing determination, "a great deal of discretion is allowed the sentencing judge." *Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984). We will not disturb a trial court's decision as to punishment "absent a showing of abuse of discretion and harm." *Id.* (citing *Hogan v. State*, 529 S.W.2d 515 (Tex. Crim. App. 1975)).

Appellant pleaded guilty to the first-degree felony offense of aggravated robbery. *See* TEX. PENAL CODE ANN. §§ 29.03, .02 (West 2019). Therefore, the punishment range for the offense was imprisonment for life or five to ninety-nine years and an optional fine not to exceed $10,000. *See id.* § 12.32. Appellant's fifty-year sentence falls within the statutory punishment range. Generally, "punishment assessed within the statutory limits . . . is not excessive, cruel, or unusual." *State v. Simpson*, 488 S.W.3d 318, 323 (Tex. Crim. App. 2016). However, a sentence that is within the applicable range of punishment might be cruel or unusual in the "exceedingly rare" or "extreme" case in which the sentence is grossly disproportionate to the offense. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)); *Solem v. Helm*, 463 U.S. 277, 287 (1983). "The gross disproportionality principle reserves a constitutional violation for only the extraordinary case." *Lockyer*, 538 U.S. at 77.

"To determine whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime, a court must judge the severity of the sentence in light of the harm caused or threatened to the victim, the culpability of the offender, and the offender's prior adjudicated and unadjudicated offenses." *Simpson*, 488 S.W.3d at 323 (citing *Graham v. Florida*, 560 U.S. 48, 60 (2010)). "In the rare case in which [the] threshold comparison leads to an inference of gross disproportionality, the court should then compare the defendant's sentence with the

4

sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *Id.* (citing *Graham*, 560 U.S. at 60). "If this comparative analysis validates an initial judgment that the sentence is grossly disproportionate, the sentence is cruel and unusual." *Id.* (citing *Graham*, 560 U.S. at 60).

The Eighth Amendment prohibits sentences that are "grossly disproportionate" to the offense for which the defendant has been convicted. *Bradfield v. State*, 42 S.W.3d 350, 353 (Tex. App.—Eastland 2001, pet. ref'd) (citing *Harmelin*). To evaluate the proportionality of a sentence, the first step is for us to make a threshold comparison between the gravity of the offense and the severity of the sentence. *Id.* When analyzing the gravity of the offense, we examine the harm caused or threatened to the victim or society and the culpability of the offender. *See, e.g.*, *Hooper v. State*, No. 11-10-00284-CR, 2011 WL 3855190, at *3 (Tex. App.—Eastland Aug. 31, 2011, pet. ref'd) (mem. op., not designated for publication) (citing *Solem*, 463 U.S. at 291–92). Only if grossly disproportionate to the offense, must we then compare Appellant's sentence with the sentences received for similar crimes in this jurisdiction or in other jurisdictions. *Bradfield*, 42 S.W.3d at 53–54.

We begin our analysis of Appellant's sentence with the fact that a person was killed as a result of Appellant's actions. Irrespective of Appellant's contention that his shooting of Bonni was an accident, Appellant traveled with others to Bonni's apartment to steal money and marihuana. Appellant took a gun with him in case anyone was home. Furthermore, Appellant was the person that knocked on the apartment door and tried to force it open when Bonni tried to keep it closed, and Appellant was the person holding the gun when it discharged, killing Bonni. Thus, the gravity of Appellant's conduct leading to his conviction was significant, and his culpability for Bonni's death is high.

Additionally, the trial judge heard punishment testimony from several different witnesses. The State's witnesses detailed how Bonni's death affected both his friends and his family. Keri Bartholomew, a close friend of Bonni, testified that Bonni's death was very hard for her family. In addition, Bartholomew testified that Bonni's girlfriend was eight months pregnant at the time of his death. Ndouane Dambert, Bonni's aunt, testified that her young niece and nephew now fear for their lives because of what happened to Bonni. Grace Bonni, Bonni's older sister, testified that their family "is broken into pieces" because of Bonni's death.

Appellant's witnesses detailed how beneficial probation was for the minor involved in the offense, how Appellant was very loyal to his family, and how he lacked any experience in using a firearm. But given all the evidence at Appellant's punishment hearing, we are hard-pressed to conclude that the trial court abused its discretion in imposing a sentence of confinement for Appellant, particularly when the only involuntary act in this case was the discharge of the firearm.

Appellant's fifty-year sentence of imprisonment was within the middle range of the term of confinement for the offense for which he was convicted. The trial court stated as follows when it sentenced Appellant:

> Mr. Applin, I considered all of this very carefully. And my job is to do what is in the defendant's best interest and also to do what's in society's best interest. And I believe that it is in your best interest and also society's best interest for you to be held fully accountable for this aggravated robbery.

One of the goals of the Penal Code is to ensure the public safety through deterrence, rehabilitation, and punishment. *See* PENAL § 1.02(1) (West 2021). Given the gravity of Appellant's conduct and its effect on Bonni's family, the sentence imposed by the trial court is not grossly disproportionate to the offense. Furthermore, the sentence serves the goal of protecting the public safety. Consequently, we need not compare Appellant's sentence with the sentences received for similar crimes in this or other

6

jurisdictions.  *See Simpson*, 488 S.W.3d at 323.  We overrule Appellant's sole issue on appeal.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


December 9, 2021

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.