**Opinion filed August 4, 2022**



In The

# Eleventh Court of Appeals

_____

## No. 11-20-00236-CR
_____

## OWEN DANIEL HEATH, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 42nd District Court**
**Taylor County, Texas**
**Trial Court Cause No. 28313A**

## M E M O R A N D U M   O P I N I O N

Owen Daniel Heath, Appellant, entered an open plea of guilty to aggravated assault with a deadly weapon, a first-degree felony, for his role as the driver of a vehicle used during the commission of the shooting of Andrew Kestler.[1]  TEX. PENAL CODE ANN. § 22.02(a), (b)(3) (West Supp. 2021).  The trial court assessed his punishment at confinement for fifteen years in the Institutional Division of the Texas

---

[1]In Texas, under a doctrine known as the *law of parties*, a person is criminally responsible for an offense committed by the conduct of another if, "acting with intent to promote or assist the commission of the offense, he . . . aids, or attempts to aid the other person to commit the offense."  PENAL § 7.02(a)(2) (West 2021).

Department of Criminal Justice. In a single issue, Appellant contends that his sentence constitutes cruel and unusual punishment in violation of the Constitutions of the United States and of the State of Texas.[2] We affirm.

*Background*

On April 23, 2019, the victim purchased an ounce of marihuana and drove to Abilene to sell ten grams to Shyla Curtis. They arranged to meet in an HEB parking lot. Curtis did not come alone. She was accompanied by three young men. Appellant was driving, and his friend Michael Giddings was in the front passenger seat. Curtis was sitting in the backseat with Eli Robles, the shooter. Giddings attempted to purchase the marihuana with a fake hundred-dollar bill, but the victim rejected it and left without making a deal. The foursome, with Appellant still driving the vehicle, proceeded to follow the victim's vehicle for nearly twenty minutes, obstructing the flow of traffic at times during this pursuit. Eventually, Appellant caught up to the victim and drove up alongside the victim's vehicle in the left lane of Highway 83/84. Within seconds, Robles began shooting at the victim. The victim's vehicle quickly began to decelerate once the shooting began, and it eventually stopped on the shoulder of Highway 83/84. Appellant sped away from the scene at around one hundred miles per hour and made no effort to alert the authorities about what happened.

Jason Wade, a deputy with the Taylor County Sheriff's Office, arrived on the scene and observed the victim's vehicle on the shoulder of Highway 83/84, with a shattered driver-side window and bullet holes in the driver-side door. He testified that the bullet holes in the door were all within about one foot of one another. He

---

[2]"[B]oth the United States Constitution and the Texas Constitution include protections against cruel and unusual punishment." *Robles v. State*, No. 11-20-00174-CR, 2022 WL 1497354, at *5 (Tex. App.—Eastland 2022, no pet. h.) (mem. op., not designated for publication). "[T]here is no significant difference between these two constitutional protections." *Id.* (citing *Cantu v. State*, 939 S.W.2d 627, 645 (Tex. Crim. App. 1997)).

2

then discovered the victim lying on the ground in front of the vehicle, with multiple gunshot wounds to the left side of his body and face. The victim was taken to Hendrick Medical Center, where he was attended to by a surgeon, Dr. Jack Needham. Dr. Needham observed four separate gunshot wounds. One bullet went through the victim's left hand; another struck and fractured his left elbow; the third struck him in the chin and sent fragments into his left eye; and the last one entered the left side of his chest and became lodged in his right lung. Dr. Needham opined that the victim's injuries were life-threatening and satisfied the legal definition of "serious bodily injury." By the time of trial, the victim had undergone at least seven surgeries due to the injuries he sustained from the shooting.

Appellant did not dispute any of the victim's testimony at trial but sought leniency because of his lesser role and culpability in the shooting. He testified that he was only involved in the failed drug sale because Giddings offered him ten dollars in gas money if he would drive. He testified that he pursued the victim in his car so that Giddings could fight him[3] but that he had no knowledge that Robles had a gun with him. In fact, Appellant testified that he hardly even knew Robles. He testified that the reason he sped away after the shooting, rather than stopping to check on the victim, was because there was a lunatic in the back of his car with a gun who had just demonstrated his willingness to shoot at a person over one hundred dollars' worth of marihuana. In short, he was worried for his own life. He explained that the reason he did not alert the authorities was because he feared that he would suffer retaliation if he were to "snitch." Again, he did not act because he feared for his own life in that moment. The victim testified that he "ha[s] no hard feelings against" Appellant, and the victim specifically stated: "If - - if the Judge

---

[3]Appellant and the victim both testified that the victim was texting with Curtis and Giddings while Appellant was following the victim and that the substance of the text messages was that Giddings wanted to have a *fist fight* with the victim.

3

believes he's reformed and can be reformed, then I feel like he should have a . . . pretty decent sentence."

The trial court assessed Appellant's punishment at confinement for fifteen years in the Institutional Division of the Texas Department of Criminal Justice. Appellant filed a motion for a new trial, arguing that his fifteen-year sentence is grossly disproportionate to the severity of the offense, "given the facts of the case."

*Discussion*

I. *Appellant's sentence is not grossly disproportionate to his offense.*

A. *Standard of Review*

When we review a trial court's sentencing determination, "a great deal of discretion is allowed the sentencing judge." *Renfroe v. State*, 529 S.W.3d 229, 233 (Tex. App.—Eastland 2017, pet. ref'd) (quoting *Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984)). We will not disturb a trial court's decision as to punishment absent a showing of abuse of discretion and harm. *Id.*

"The concept of proportionality is embodied in the Constitution's ban on cruel and unusual punishment and requires that punishment be graduated and proportioned to the offense." *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016) (citing U.S. CONST. amend VIII). This is a "narrow principle that does not require strict proportionality between the crime and the sentence." *Id.* (citing *Harmelin v. Michigan*, 501 U.S. 957 (1991) (Kennedy, J. concurring)). Rather, to run afoul of the Eighth Amendment, a sentence must be *grossly* disproportionate to the crime. *Id.* (citing *Ewing v. California*, 538 U.S. 11, 23 (2003) (plurality opinion)). For some context, the Supreme Court of the United States "has rejected a disproportionality attack on a sentence of twenty-five years to life imposed . . . [on] a defendant who merely stole three golf clubs." *Id.* at 323 (citing *Ewing*, 538 U.S. at 29–30). In short, a punishment for a term of years will be grossly disproportionate "only in the exceedingly rare or extreme case." *Id.* at 322–23 (citing *Lockyer v. Andrade*, 538

4

U.S. 63, 73 (2003)).  Moreover, a punishment that falls within the statutory range determined appropriate by the legislature for an offense will generally not be considered "excessive, cruel, or unusual."  *Id.* at 323 (citing *Ex parte Chavez*, 213 S.W.3d 320, 323–24 (Tex. Crim. App. 2006)).

To determine whether a sentence for a term of years is grossly disproportionate to the offense committed, we "must judge the severity of the sentence in light of the harm caused or threatened to the victim, the culpability of the offender, and the offender's prior adjudicated and unadjudicated offenses."  *Id.* (citing *Graham v. Florida*, 560 U.S. 48, 60 (2010); *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992)).  "In the rare case in which this threshold comparison leads to an inference of gross disproportionality, the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions."  *Id.* (citing *Graham*, 560 U.S. at 60).  If this second round of comparisons confirms the initial judgment from the first round of comparisons that the sentence is grossly disproportionate, the sentence is cruel and unusual.  *Id.*

B. *Analysis*

Appellant pleaded guilty to a first-degree felony.  PENAL § 22.02(b)(3).  The punishment range for a first-degree felony is imprisonment for life or for a term of not less than five years or more than ninety-nine years.  *Id.* § 12.32(a).  Appellant's punishment was assessed at imprisonment for fifteen years, which is considerably closer to the statutory *minimum* of five years than the statutory *maximum* of ninety-nine years or life.  Generally, a sentence for a term of years that falls within the statutory range prescribed by the legislature will not amount to cruel and unusual punishment.  *Simpson*, 488 S.W.3d at 322.  This is especially true when the sentence, like Appellant's, is at the *lower end* of the statutory range.  *See, e.g., Winters v. State*, No. 05-19-00696-CR, 2020 WL 5036148, at *8 (Tex. App.—Dallas July 2, 2020,

pet. ref'd) (mem. op., not designated for publication); *Mosley v. State*, No. 01-18-00812-CR, 2019 WL 5607225, at *7 (Tex. App.—Houston [1st Dist.] Oct. 31, 2019, no pet.) (mem. op., not designated for publication). If a sentence for a term of years is presumptively *not* excessive so long as it falls *anywhere* within the statutory range prescribed by the legislature, then the presumption becomes increasingly weighty as the sentence moves down the scale toward the lower end of that range.

When we compare the gravity of the offense that Appellant committed to the severity of his sentence, we are not persuaded that the punishment received was grossly disproportionate. *Simpson*, 488 S.W.3d at 322. Appellant relentlessly drove in pursuit of the victim for twenty minutes, cutting off other vehicles and obstructing the flow of traffic in order to do so. Appellant then drove up alongside the victim's vehicle and kept pace with it long enough for Robles to fire multiple rounds into the driver's side door of the victim's vehicle, with each shot landing within about one foot of the other. As the trial court put it, "for six shots to be grouped as tightly as these, the driver and the shooter had to be acting in concert." The victim suffered gunshot wounds to his chest, elbow, hand, and face, and had already undergone seven surgeries by the time of Appellant's sentencing hearing.

Appellant argues that his fifteen-year sentence is excessive because (1) he was only eighteen years old when the offense occurred, (2) he did not know Robles had a gun until the shooting began, and (3) he failed to prevent or mitigate the offense only because he was afraid of Robles. In other words, Appellant argues that there are mitigating circumstances that merit a reduced sentence for the role he played in the commission of this offense. While Appellant may have presented argument "that his sentence was too harsh," that does not necessitate a finding that it was unconstitutional. *Id.* at 324 (citing *State v. Zalman*, 400 S.W.3d 590 (Tex. Crim. App. 2013)). Ostensibly, Appellant *already did* receive a reduced sentence from the

trial court inasmuch as the statutory range for first-degree felonies would have permitted imprisonment for up to ninety-nine years or life.

Considering the gravity of Appellant's offense and the severity of his fifteen-year sentence, which is clearly on the lower end of the punishment range for first-degree felonies, we cannot say that Appellant's sentence is grossly disproportionate to the offense to which he pleaded guilty and for which he was convicted. Accordingly, we need not compare Appellant's sentence with the sentences of others received for similar crimes in this jurisdiction or sentences received in other jurisdictions. *Renfroe*, 529 S.W.3d at 234; *see also Graham*, 560 U.S. at 60; *McGruder*, 954 F.2d at 316. We hold that the trial court did not abuse its discretion, nor did it violate Appellant's Eighth Amendment rights, when it assessed Appellant's punishment at fifteen years' imprisonment. *See Young v. State*, No. 11-16-00325-CR, 2018 WL 5290020, at *3 (Tex. App.—Eastland Oct. 25, 2018, no pet.) (mem. op., not designated for publication) (concluding that defendant's sentence of twenty years' imprisonment for the offense of aggravated assault was not violative of the Eighth Amendment even though the defendant pleaded guilty and had no prior criminal history). Accordingly, we overrule Appellant's sole issue on appeal.

*This Court's Ruling*

We affirm the judgment of the trial court.


W. BRUCE WILLIAMS

August 4, 2022                                    JUSTICE

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.