**AFFIRM AS MODIFIED; Opinion Filed February 3, 2023**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-21-00974-CR**
**No. 05-21-00975-CR**
**No. 05-21-00976-CR**

**DERICK TOBAR-GONZALEZ, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 219th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause Nos. 219-80103-2020, 219-80104-2020, 219-80105-2020**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Nowell, and Kennedy
Opinion by Justice Kennedy

Derick Tobar-Gonzalez appeals his convictions for aggravated assault family violence with a deadly weapon, aggravated sexual assault, and aggravated kidnapping. In a single issue, appellant argues the sentences imposed were grossly disproportionate to the charged offenses in consideration of the totality of the circumstances. In a single cross-issue, the State urges the judgments be modified to delete special findings, regarding whether appellant waived his right to appeal his punishment. We affirm the judgments as modified. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

## BACKGROUND

In the middle of April of 2019, appellant began working at a restaurant as a busboy where he met A.R. who was working at the restaurant as a waitress. By mid-July of 2019, they entered into a dating relationship. While they dated, appellant told A.R. that he was jealous of any person who sent her any messages, especially if they were men, and that by going out with her male friends she "was disrespecting him." Appellant also acted controlling towards A.R., wanting to know what she was wearing, who she went out with, and where she was going to be "at all times."

In late September of 2019, when A.R. returned from a trip, she discovered appellant lying in her bed with his cousin after having used a key to her apartment she did not know he had. About that same time, she learned that appellant had taken her car without her permission, drove it to a party, and damaged the car's rear view mirror, doors, and rear bumper. At that point, A.R. decided she no longer wanted to be in a relationship with appellant because he did not trust her and he insulted her by stealing and damaging her car. A.R. told appellant she did not want to see him anymore and he and his cousin needed to leave her apartment.

After their relationship ended, appellant continued to send messages to A.R., asking her to forgive him. He also visited her work and apartment, even after A.R. told him she was not interested in resuming their relationship. A.R. began working at a different restaurant, and appellant would go eat at the restaurant, even though A.R. would ignore him. On or about October 18, 2019, A.R. called the police to her

apartment because appellant wanted her to return a pair of his shoes and a necklace he had left at her apartment. A.R. was willing to give the items back, but his behavior—screaming and "not acting like a normal person that would want to talk"—made her uncomfortable. When the police arrived, A.R. returned appellant's shoes and necklace. The police instructed appellant not to contact A.R. or visit her home or workplace. They also instructed A.R. that if he did, she had the right to call the police and have appellant detained.

On October 21, 2019, A.R.'s day proceeded like many others, including dropping off and picking up her daughters from school and working two shifts at a restaurant. She had recently begun dating J.S., a man she later married. That night after she finished working her second shift, she kissed J.S. good-bye and drove to her apartment. A.R. talked with J.S. on her phone while she drove and ended the call when she got to her apartment. She got out of her car and began walking towards her apartment when she heard a voice telling her, "if I was not going to be his, that I was not going to be anybody else's . . . ."

On that same day, appellant had borrowed a car from a friend, and that night he drove to and parked at the restaurant where he knew A.R. worked. He watched her get into her car and followed her home to her apartment. At approximately 10 p.m., appellant grabbed A.R., strangled her to the point of losing consciousness, and carried her to the back of the borrowed car. Appellant then drove to the trailer park where he lived, moved A.R. to his own car, returned the borrowed car, and then

drove his own car with A.R. in it to the trailer where he lived with several other people. Appellant carried A.R. into a bedroom in the trailer. Thereafter, A.R. regained consciousness and began yelling. Appellant again strangled her to the point of losing consciousness. While A.R. was unconscious, appellant sexually assaulted her. Early in the morning of October 22, A.R. regained consciousness and began vomiting. Appellant took one of his roommates to see A.R., told him she had taken drugs, and instructed him and another roommate not to call the police because she would recover. At approximately 6:30 a.m., appellant packed a bag of his clothes and other belongings, left the trailer, and drove to a friend's apartment where he was later arrested. One of appellant's roommates called the police at approximately 7:00 a.m.

On January 16, 2020, a grand jury indicted appellant with the offenses of aggravated assault family violence with a deadly weapon, aggravated sexual assault, and aggravated kidnapping. Appellant entered an open plea of guilty in each case. After accepting his plea, finding him guilty of the charged offenses, and conducting a hearing on punishment, the trial judge sentenced appellant to sixty-five years' imprisonment in each case, to run concurrently.

## DISCUSSION

In his sole issue, appellant urges that the trial court erred by imposing sentences on him that are a grossly disproportionate to the charged offenses in consideration of the totality of the circumstances. The State urges appellant failed

–4–

to preserve his issue for appellate review. We agree. In order to preserve his complaint regarding the sentences imposed, appellant needed to make a timely objection at the time the sentences were imposed or in a post-trial motion. *See* TEX. R. APP. P. 33.1(a)(1). Appellant did not object at the time he was sentenced, and his motion for new trial only alleged the verdict was "contrary to the law and the evidence," which is insufficient to preserve a complaint that the sentence is excessive. *See Neal v. State*, No. 05-19-00699-CR, 2020 WL 3958192, at *2 (Tex. App.—Dallas July 13, 2020, no pet.) (mem. op., not designated for publication). Further, although appellant urges he brought the issue to the trial court's attention before he was sentenced, he does not show that the trial court ruled on his objection or that he objected to the trial court's failure to rule. *See* TEX. R. APP. P. 33.1(a)(2). But, even if appellant had preserved his issue, we could not conclude the sentences assessed were excessive or constitutionally disproportionate to the offenses for which appellant was convicted.

An allegation of disproportionate punishment is a valid legal claim. *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016). The concept of proportionality is embodied in the Constitution's ban on cruel and unusual punishment and requires that punishment be graduated and proportioned to the offense. *See* U.S. CONST. amend VIII. But, this is a narrow principle that does not require strict proportionality between the crime and the sentence. *See Simpson*, 488 S.W.3d at 322 (citing *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy,

J., concurring)). Rather, it forbids only extreme sentences that are "grossly disproportionate" to the crime. *See Ewing v. California*, 538 U.S. 11, 23 (2003) (plurality opinion). While the United States Supreme Court has acknowledged the lack of clarity in its precedent regarding what factors may indicate gross disproportionality, it has nevertheless emphasized that a sentence is grossly disproportionate to the crime only in the exceedingly rare or extreme case. *See Simpson*, 488 S.W.3d at 322–23 (citing *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)).

To determine whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime, a court must judge the severity of the sentence in light of the harm caused or threatened to the victim, the culpability of the offender, and the offender's prior adjudicated and unadjudicated offenses. *See Simpson*, 488 S.W.3d at 323 (citing *Graham v. Florida*, 560 U.S. 48, 60 (2010). In the rare case in which this threshold comparison leads to an inference of gross disproportionality, the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. *See id.* If this comparative analysis validates an initial judgment that the sentence is grossly disproportionate, the sentence is cruel and unusual. *See id.*

Appellant's sentence fell within the statutory range punishment for the convicted offenses, five to ninety-nine years' imprisonment. *See* TEX. PEN. CODE ANN. §§ 12.32(a) (first-degree felony punishment), 20.04(c) (aggravated

kidnapping), 22.02(b) (aggravated assault with deadly weapon), 22.021(e) (aggravated sexual assault). And, the court of criminal appeals has traditionally held that punishment assessed within the statutory limits is not excessive, cruel, or unusual. *See Simpson*, 488 S.W.3d at 323 (citing *Ex parte Chavez*, 213 S.W.3d 320, 323–24 (Tex. Crim. App. 2006)).

Appellant urges us to consider that he had no prior criminal record, cooperated with authorities, pleaded guilty to the offenses, and requested a sentence of fifty years or fewer. Although he argues that he has accepted responsibility for his actions, when addressing the harm caused or threatened to A.R., he cites only his testimony that he asked for A.R.'s forgiveness and avers he was "very confused." The record contains much more evidence of the harm to A.R. When the police found her at appellant's trailer, she was covered in bruises, had difficulty speaking, and required emergency medical attention. She testified at the punishment hearing that she spent so long recovering in the hospital and a rehabilitation center that it was about one month before she felt she could see her daughters: "I wasn't in a way that they should see me that way." A.R. required therapy to walk, to speak, and to use her hands and her "entire body." Even when A.R. moved back to her apartment, she was dependent upon family to assist in her recovery. At the time of the punishment hearing, A.R. was still unable to move the way she used to before the offenses and consequentially cannot participate in activities with her daughters as she did before. Additionally, her vision was permanently impaired as a result of the brain damage

she sustained when appellant strangled her, so that she cannot see more than the general shape or colors of a person or even the expressions on her children's faces. In sum, as a result of appellant's offenses, she has been permanently and substantially harmed physically and emotionally by an individual she dated for approximately three months and who professed to love her.

Even considering appellant's arguments that the record contains "countless times Appellant took responsibility for his actions" and that he lacked prior convictions or arrests, we cannot conclude this is one of the "rare" cases that leads to the inference that appellant's sentence was grossly disproportionate to the offenses he admitted to committing. Consequently, we see no need to compare his sentences to the sentences imposed on others. *See Simpson*, 488 S.W.3d at 323.

We overrule appellant's sole issue.

## MODIFICATION OF THE JUDGMENTS

In its cross-issue, the State asks this Court to modify appellant's three judgments by deleting the special findings, which provide: "Appeal Waived. No Permission to Appeal Granted." The records in all three cases contain appellant's waiver of rights and judicial confession with notations that appellant waived his right of appeal as to guilt-innocence, as well as the trial court's certification of defendant's right to appeal, which is annotated to read appellant has the right of appeal "as to punishment."

We may modify a trial court's written judgment if the necessary information to do so is contained in the record. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd). We have concluded that there is a sufficient basis in the record to support the modifications of all three judgments requested by the State. Accordingly, we modify all three judgments to strike the special findings, which provide: "Appeal Waived. No Permission to Appeal Granted."

## CONCLUSION

We affirm the judgments as modified.

/Nancy Kennedy/

NANCY KENNEDY
JUSTICE

DO NOT PUBLISH
TEX. R. APP. P. 47
210974F.U05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

DERICK TOBAR-GONZALEZ,
Appellant

No. 05-21-00974-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 219th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 219-80103-
2020.
Opinion delivered by Justice
Kennedy. Justices Partida-Kipness
and Nowell participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**MODIFIED** as follows:

to strike the special findings, which provide: "Appeal Waived. No
Permission to Appeal Granted."

As **REFORMED**, the judgment is **AFFIRMED**.


Judgment entered this 3rd day of February, 2023.



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

DERICK TOBAR-GONZALEZ,
Appellant

No. 05-21-00975-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 219th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 219-80104-
2020.
Opinion delivered by Justice
Kennedy. Justices Partida-Kipness
and Nowell participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**MODIFIED** as follows:

to strike the special findings, which provide: "Appeal Waived. No
Permission to Appeal Granted."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 3rd day of February, 2023.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DERICK TOBAR-GONZALEZ,
Appellant

No. 05-21-00976-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 219th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 219-80105-
2020.
Opinion delivered by Justice
Kennedy. Justices Partida-Kipness
and Nowell participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

to strike the special findings, which provide: "Appeal Waived. No Permission to Appeal Granted."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 3rd day of February, 2023.