**AFFIRM AS MODIFIED; and Opinion Filed May 28, 2024**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

## No. 05-22-01324-CR
_____

**TAISHA MAYFIELD RILEY, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 3**
**Dallas County, Texas**
**Trial Court Cause No. F-1930351-J**

## MEMORANDUM OPINION

Before Justices Smith, Miskel, and Breedlove
Opinion by Justice Smith

Taisha Mayfield Riley appeals the trial court's judgment convicting her of theft of property with an aggregate value of at least $30,000 but less than $150,000 from a non-profit organization. *See* TEX. PENAL CODE ANN. §§ 31.03(a), (e)(5), (f)(3)(B). In two issues, appellant asserts that her sentence is grossly disproportionate to the offense in violation of the Eighth Amendment to the United States Constitution and Article I, Section 13 of the Texas Constitution. In a cross-point, the State requests that the Court reform the judgment to correctly reflect of the names of the attorneys representing the State at trial. Because the judgment

contains an error that we may correct on appeal, we affirm the trial court's judgment as modified.

## Background

Appellant was charged by indictment with theft of property having an aggregate value between $30,000 and $150,000 from a nonprofit organization, the South Grand Prairie High School Chey-Anne Booster Club. She judicially confessed to the offense, entered a guilty plea pursuant to an open plea agreement, and proceeded to trial before the court on punishment.

Laura Rohloff, director of the Chey-Anne Dance Team, testified that appellant was the team's booster club president and, in that position, oversaw fundraising, purchasing team necessities, helping with costuming, providing meals for game nights, and leading team bonding events. Spirit of America, a company that coordinates dance and cheer, invited the dance team to perform in the 2018 Macy's Thanksgiving Day Parade. The trip was self-funded, and each team member paid approximately $2,800 to participate. Rohloff testified that appellant, who had complete control over the booster club's finances, was responsible for collecting the payments and forwarding them to Spirit of America.

Approximately a week before the trip, Spirit of America informed Rohloff that it had received only an initial deposit for the trip and a $59,000 balance remained due. Rohloff spoke with appellant, who said she would forward a tracking number for the payments. When Rohloff did not receive anything, she asked appellant to

–2–

confirm that the balance had been paid. Appellant did not provide confirmation, and Rohloff notified the dance team parents. Ultimately, the school district and Texas Trust, the booster club's bank, paid the balance due and the team was able to travel to and perform in the parade. Rohloff testified that she and appellant had an extremely close relationship and, as a result of appellant's actions, Rohloff suffered from trust issues and had to attend therapy. Rohloff believed that appellant needed to serve some time because she broke the trust of children, hurt them emotionally, and stole from them.

Ginny Diaz testified that appellant was a close friend and a "second mom" to Diaz's daughter, who was on the dance team. Diaz's family planned to go on the trip and raised money to pay for it. Appellant was collecting the money for the trip, and receipts show Diaz gave appellant more than $10,000 in cash. Diaz testified that the experience hurt the morale of the team and many, including her family, did not give money directly to the booster club afterwards.

Guadalupe Salazar was elected booster club president after appellant was removed. He testified that the organization "owed money everywhere," there were two separate bank accounts that no one could access, and the "money wasn't there." The booster club learned that appellant had been stealing for years, and it took the club "years and years" and "a lot of sacrifice" to pay the club's debts.

Grand Prairie Police Detective Trent Allen investigated the theft. Rohloff assisted in reviewing bank records to identify inappropriate purchases by appellant.

In all, they identified unauthorized booster club spending of more than $55,000 in 2018. An exhibit admitted at trial showed some of the unauthorized transactions, including $14,275 in cash withdrawals, $8,349.42 to Sprint, multiple expenses for out of town restaurants and hotels unrelated to team travel, vehicle dealership expenses (despite the fact that the team did not have a vehicle), and utility bill payments. There also was a Carnival Cruise charge, and Detective Allen located a photograph on Facebook of appellant on a Carnival Cruise a month after the charge.

Appellant testified that she was involved with the booster club from 2014 to 2018, first as a parent and later as treasurer and president. She testified that she had been in declining health since 2015. She was diagnosed with fluid and pressure in her brain, which required placement of a stent. She also had been diagnosed with other ailments requiring medical treatment, including Hodgkin's lymphoma, thyroid problems, rheumatoid arthritis, sleep apnea, cardio neuropathy, and hypertension. Appellant was placed on disability in 2015.

As booster club president, appellant was responsible for accepting the payments for the Macy's Thanksgiving Day Parade trip. She explained that "[a] lot was going on at home," including "financial issues," and her stealing "became greed." She testified that she freely and voluntarily pleaded guilty to the offense and accepted responsibility for her actions, but she did not steal the money with malicious intent. She acknowledged that her actions had a tremendous impact on the victims and expressed remorse for having affected girls and families with whom

she was close. South Grand Prairie is a close-knit community, and she betrayed that community. However, appellant also testified that there were times when she would pay for things for the dance team with her own money and she used booster club cash to purchase items like hangers, food, or decorations. She paid Sprint $8,349.42 for iPads, but explained that "it really was just one iPad" on her account and she used it for the dance team.

Appellant described how this case had impacted her mentally, physically, and emotionally. She suffered from depression and attended counseling. She also no longer lived with her immediate family; she moved to Tennessee because there were better doctors there, but also because she received personal threats and no longer felt safe living in Grand Prairie. Her health had continued to deteriorate. To appellant, that was "punishment for what [she] did." She explained to the trial court her plan to pay restitution should the court place her on probation. She also testified that she had no prior felonies, although she previously served probation for a 2003 misdemeanor worthless check charge.

After hearing the evidence and argument of counsel, the trial court found appellant guilty and assessed punishment at four years' confinement. This appeal followed.

## Punishment

In two issues, appellant asserts that her sentence is grossly disproportionate to the offense and inappropriate to her in violation of the Eighth Amendment to the

United States Constitution and Article I, Section 13 of the Texas Constitution. According to appellant, the evidence shows the punishment was severe and she needed probation instead of incarceration.

Constitutional rights, however, including the right to be free from cruel and unusual punishment, may be waived. *See Castaneda v. State*, 135 S.W.3d 719, 723 (Tex. App.—Dallas 2003, no pet.). Subject to two narrow exceptions for absolute rights or waivable-only rights not at issue in this case, the record must show that an appellant made a timely request, objection, or motion to the trial court for error to be preserved on appeal. *See* Tex. R. App. P. 33.1(a)(1); *Garza v. State*, 435 S.W.3d 258, 260–61 (Tex. Crim. App. 2014). Appellant did not object that her sentence was grossly disproportionate when the sentence was announced or raise her complaint in a post-conviction motion. Accordingly, she has not preserved her complaint for appellate review. *See Sims v. State*, No. 05-18-00572-CR, 2019 WL 2266547, at *3 (Tex. App.—Dallas May 28, 2019, no pet.) (mem. op., not designated for publication) (argument that trial court violated Eighth Amendment by imposing grossly disproportionate punishment not preserved for review when defendant failed to object at time sentence was imposed or in motion for new trial).

Even had appellant properly preserved her complaint for our review, her sentence is not grossly disproportionate. The concept of proportionate punishment is embodied in the Eighth Amendment, but it "is a narrow principle that does not

–6–

require strict proportionality between the crime and the sentence."[1] *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016). "[I]t forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.* (citing *Ewing v. California*, 538 U.S. 11, 23 (2003) (plurality opinion)). A sentence is grossly disproportionate to the crime only in the exceedingly rare or extreme case. *Id.* at 322–23 (citing *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)). Further, a sentence within the statutory limits is not excessive, cruel, or unusual under the Eighth Amendment or the Texas Constitution. *See id.* at 323; *Lambright v. State*, 318 S.W.2d 653, 653 (Tex. Crim. App. 1958).

To determine whether a sentence for a term of years is grossly disproportionate to a defendant's crime, we conduct a threshold comparison, judging "the severity of the sentence in light of the harm caused or threatened to the victim, the culpability of the offender, and the offender's prior adjudicated and unadjudicated offenses." *Simpson*, 488 S.W.3d at 323 (citing *Graham v. Florida*, 560 U.S. 48, 60 (2010)). In the rare case in which this threshold comparison leads to an inference of gross disproportionality, we then compare the defendant's sentence with sentences received by other offenders in the same jurisdiction and with

---

[1] Because "there is no significant difference between the protections afforded" by the state and federal constitutions with respect to cruel and unusual punishment, *see Forbit v. State*, No. 05-19-00946-CR, 2021 WL 1884655, at *1 (Tex. App.—Dallas May 11, 2021, no pet.) (mem. op., not designated for publication), we address appellant's challenges under the Eighth Amendment and Article I, Section 13 of the Texas Constitution together.

sentences imposed for the same crime in other jurisdictions. *Id.* (citing *Graham*, 560 U.S. at 60). If this comparison validates an initial judgment that the sentence is grossly disproportionate, the sentence is cruel and unusual. *Id.*

Here, appellant pleaded guilty to theft of property from a non-profit organization in the amount of more than $30,000 but less than $150,000, a second-degree felony, and her four-year sentence was well within the statutory limits of two to twenty years for the offense. *See* TEX. PENAL CODE ANN. §§ 12.33(a), 31.03(e)(5), (f)(3)(B). In assessing punishment, the trial court stated that the amount of money taken and what appellant used it for was egregious, and we agree. Among other things, appellant used booster club funds to pay for a car, a cruise, her utilities, and other personal expenses, including restaurant and hotel charges. In doing so, she betrayed teenagers, parents, and a community that relied on and trusted her. And, it took considerable time and sacrifice for the booster club to pay debts that appellant wrongfully incurred.

Appellant had serious health issues, but many of those existed well before she committed the offense. She also expressed remorse and had no prior felony convictions. However, appellant's sentence was on the low end of the statutory limit for her offense. Considering the severity of appellant's sentence in light of those factors, the harm caused to her victims, and her culpability, we conclude that the sentence is not one of those rare or extreme cases raising an inference of gross disproportionality. Accordingly, we need not compare appellant's sentence to

sentences imposed on others. *See Simpson*, 488 S.W.3d at 323. We overrule appellant's first and second issues.

## Modification of Judgment

In a cross-issue, the State requests that we modify the trial court's judgment to correctly reflect the names of counsel representing it at trial. This Court has the power to modify a judgment to speak the truth when we have the necessary information to do so. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd). Here, the record reflects that Steve Fawcett and Melinda Chancy represented the State at trial, but the judgment indicates that the State was represented by Brandie Wade. Accordingly, we conclude that the trial court's final judgment should be modified to read: "Attorney for State: Steve Fawcett and Melinda Chancy". We sustain the State's cross-issue.

## Conclusion

We modify the trial court's judgment to show that Steve Fawcett and Melinda Chancy represented the State at trial. The judgment, as modified, is affirmed.

/Craig Smith/
CRAIG SMITH
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
221324F.U05

–9–



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

TAISHA MAYFIELD RILEY,
Appellant

No. 05-22-01324-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District
Court No. 3, Dallas County, Texas
Trial Court Cause No. F-1930351-J.
Opinion delivered by Justice Smith.
Justices Miskel and Breedlove
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**MODIFIED** as follows:

The "Attorney for State" section of the judgment is modified to replace
"Brandie Wade" with "Steve Fawcett and Melinda Chancy".

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered this 28th day of May, 2024.