

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00173-CR

_____

STEVEN RAY DOUGLAS, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 89th District Court
Wichita County, Texas
Trial Court No. DC89-CR2023-0611

Before Bassel, Womack, and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

Appellant Steven Ray Douglas appeals his sentence of twenty years' incarceration for violating the accident-involving-personal-injury-or-death statute, a second-degree felony offense under the facts of this case. *See* Tex. Transp. Code Ann. §§ 550.021(a)(3)–(4), (c)(1)(A), .023(1), (3). In two issues, Douglas asserts that his sentence is (1) supported by insufficient evidence and (2) grossly disproportionate to his offense. We will affirm.

## I. BACKGROUND

In November 2018, Douglas was involved in an automobile accident in which another driver, Lorri Garst, was killed. Witnesses testified that before the collision, Douglas had been "driving . . . very erratically, bobbing in and out between cars" without using his turn signal at speeds "significantly faster" than eighty miles per hour.[1] While driving in this manner, Douglas came up behind two vehicles driving side-by-side on the two-lane highway. Unable get around the two vehicles, Douglas attempted to drive in between them, hitting both in the process. One of the vehicles

---

[1]Although Douglas acknowledged at trial that he had "probably [been] driving a little faster than the other cars," he contradicted the eyewitnesses' testimony that he had changed lanes erratically. In his briefing before this court, he explained that he had been driving fast because he had just learned that his father-in-law had died and wanted to get home to be with his wife. But we note that while the record indicates that Douglas's father-in-law had died the morning of the accident, Douglas never explicitly testified that he had been hurrying home to see his wife when the crash occurred. Rather, he simply stated that he had been returning home "after doing some laundry."

was able to pull over without incident, but the other—Garst's—began flipping into the median. Garst was ejected from her vehicle, and witnesses later found her body lying in the grass. She died at the scene.

After initially pulling over at the next highway exit and attempting to walk back to the scene of the accident, Douglas drove away without giving his information to anyone. Witnesses to the crash followed him and called 911 as he exited the highway. One of the witnesses provided Douglas's license-plate number to the 911 dispatcher. That witness observed that Douglas seemed "[n]ot really aware of what [had] happened" and "looked like he was a little intoxicated."

State Trooper Todd Lewis was dispatched to the scene of the accident. After running Douglas's license-plate number, Trooper Lewis went to Douglas's listed address and found a car matching the description provided by witnesses. He noticed that a trash can had been pushed up next to the car and a carpet had been placed over the top of the vehicle's right side in an attempt to hide the damage.

While Trooper Lewis was standing by the car, Douglas came outside and identified himself. Douglas said, "I was fixing to come see y'all." He admitted that he had been involved in an automobile accident and spoke about some of the details. He indicated that he wanted to cooperate in the investigation and when he was informed that someone had died in the crash, he put his head down and expressed that he was sorry. Trooper Lewis arrested Douglas for failing to stop and render aid after the collision.

Ultimately, a grand jury indicted Douglas for violating the accident-involving-personal-injury-or-death statute, a second-degree felony in this case. Douglas pleaded guilty. In exchange for Douglas's guilty plea, the State agreed not to seek to enhance his punishment range beyond that of a second-degree felony based on his prior felony convictions,[2] but there was no other agreement between Douglas and the State regarding punishment.

Following a punishment hearing, the trial court assessed Douglas's punishment at twenty years in prison[3] and signed a judgment sentencing him accordingly. This appeal followed.

## II. DISCUSSION

### A. DOUGLAS IS NOT ENTITLED TO AN EVIDENTIARY-SUFFICIENCY REVIEW

In his first issue, Douglas argues that the trial court abused its discretion by sentencing him to twenty years in prison because the evidence was insufficient to support such a sentence. "But as the Texas Court of Criminal Appeals has recognized, a trial court's decision regarding what sentence to impose is a 'normative process, not intrinsically factbound.'" *Garcia v. State*, No. 02-23-00097-CR, 2023 WL 8467492, at *2 (Tex. App.—Fort Worth Dec. 7, 2023, no pet.) (mem. op., not

---

[2]The State made clear that it still intended to put on evidence related to Douglas's criminal history during the punishment hearing.

[3]This sentence is within the statutory limits for Douglas's second-degree felony offense. *See* Tex. Penal Code Ann. § 12.33 (providing that the punishment range for a second-degree felony is two to twenty years in prison and up to a $10,000 fine).

4

designated for publication) (quoting *Ex parte Chavez*, 213 S.W.3d 320, 323 (Tex. Crim. App. 2006)). Thus, a trial court's assessment of punishment is not subject to an evidentiary-sufficiency review. *See Garcia v. State*, 316 S.W.2d 734, 735 (Tex. Crim. App. 1958); *Thompson v. State*, No. 03-18-00654-CR, 2020 WL 5884113, at *4 (Tex. App.—Austin Sept. 30, 2020, no pet.) (mem. op., not designated for publication); *Montelongo v. State*, No. 08-18-00093-CR, 2020 WL 4034961, at *5 (Tex. App.—El Paso July 17, 2020, pet. ref'd) (not designated for publication); *Schmitt v. State*, No. 07-18-00378-CR, 2020 WL 1880932, at *1 (Tex. App.—Amarillo Apr. 15, 2020, pet. ref'd) (mem. op., not designated for publication); *Jarvis v. State*, 315 S.W.3d 158, 162 (Tex. App.—Beaumont 2010, no pet.); *see also Pena v. State*, No. 04-18-00491-CR, 2019 WL 2996964, at *2 (Tex. App.—San Antonio July 10, 2019, no pet.) (mem. op., not designated for publication) ("[A]n assertion that a sentence is not supported by sufficient evidence is not a reviewable issue on appeal."). Accordingly, we reject Douglas's evidentiary-sufficiency challenge and overrule his first issue.

## B. DOUGLAS'S SENTENCE IS NOT UNCONSTITUTIONAL

In his second issue, Douglas argues that his twenty-year sentence—despite being within the statutory limits—is grossly disproportionate to his offense and is therefore unconstitutional. We disagree.

### 1. Applicable Law

"Generally, punishment assessed within the statutory limits is not excessive, cruel, or unusual punishment." *Dale v. State*, 170 S.W.3d 797, 799 (Tex. App.—Fort

5

Worth 2005, no pet.) (first citing *Jordan v. State*, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973); and then citing *Alvarez v. State*, 63 S.W.3d 578, 580 (Tex. App.—Fort Worth 2001, no pet.)).  Indeed, a trial court has "essentially 'unfettered'" discretion to impose any sentence within the prescribed statutory range, *Chavez*, 213 S.W.3d at 323 (quoting *Miller-El v. State*, 782 S.W.2d 892, 895 (Tex. Crim. App. 1990)), and any sentence within the statutory limits is virtually "unassailable" on appeal provided that it is based upon the sentencer's informed normative judgment, *id.* at 324.  But a narrow exception to this general rule exists:  the Eighth Amendment prohibits noncapital punishment within the statutory limits if the sentence is grossly disproportionate to the offense.  *Graham v. Florida*, 560 U.S. 48, 59–60, 130 S. Ct. 2011, 2021–22 (2010); *Harmelin v. Michigan*, 501 U.S. 957, 997–1001, 111 S. Ct. 2680, 2702–05 (1991) (Kennedy, J., concurring in part and concurring in judgment); *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016).  Although the "precise contours [of the gross-disproportionality exception] are unclear," *Harmelin*, 501 U.S. at 998–1001, 111 S. Ct. at 2703–05 (Kennedy, J., concurring in part and concurring in judgment), one thing is certain: it applies "only in the exceedingly rare or extreme case," *Simpson*, 488 S.W.3d at 322–23; *see Chavez*, 213 S.W.3d at 323–24.

To determine whether a noncapital sentence qualifies for this uncommon and "somewhat amorphous" exception, we engage in a three-step review beginning with a threshold analysis comparing the gravity of the offense to the severity of the sentence. *Graham*, 560 U.S. at 60, 130 S. Ct. at 2022; *Simpson*, 488 S.W.3d at 323; *see also Chavez*,

6

213 S.W.3d at 323–24.  Assessing the gravity of the offense requires us to consider (1) the harm that the defendant caused or threatened to the victim and to society, (2) the defendant's culpability, and (3) the defendant's prior adjudicated and unadjudicated crimes.  *See Simpson*, 488 S.W.3d at 323.  We weigh these factors against the defendant's sentence, looking to precedent for guidance as to the constitutional limits of proportional severity.  *See Hutto v. Davis*, 454 U.S. 370, 374–75, 102 S. Ct. 703, 706 (1982) (per curiam) (chastising lower courts for extending gross-disproportionality exception beyond the limits of precedent); *McGruder v. Puckett*, 954 F.2d 313, 317 (5th Cir. 1992) (holding sentence was not grossly-disproportionate based on Supreme Court and Fifth Circuit precedent).  In the rare case in which this threshold analysis indicates gross disproportionality, we proceed to steps two and three by comparing the defendant's sentence with those received by similar offenders in this jurisdiction and with those imposed for the same crime in other jurisdictions. *Simpson*, 488 S.W.3d at 323; *see also Solem v. Helm,* 463 U.S. 277, 296–300, 103 S. Ct. 3001, 3012–15 (1983) (applying steps two and three).

## 2.  Threshold Analysis

Douglas's gross-disproportionality argument does not pass the threshold test. Rather, considering the factors set forth above, *see Simpson*, 488 S.W.3d at 323, we conclude that his sentence is within constitutional bounds.

*First*, Douglas caused significant harm.  The record shows that he drove erratically and dangerously and attempted to drive between two side-by-side vehicles

7

on a two-lane highway. This unsafe driving endangered all motorists on the highway and actually killed one of them—Garst. *Cf. Jackson v. State*, No. 02-23-00156-CR, 2023 WL 8267693, at *2 (Tex. App.—Fort Worth Nov. 30, 2023, no pet.) (mem. op., not designated for publication) (applying threshold gross-disproportionality test and holding that appellant had caused significant harm by, inter alia, "fleeing from police in [a] stolen vehicle and ultimately wrecking it," thereby "plac[ing] . . . other motorists in danger"). Garst's daughter testified that Garst was the "glue that held [their] family together" and that the family has been "impacted greatly" by her death. She also testified that at the time of trial she and her children were still in counseling to help them cope with Garst's death, and she stated that she will not allow her teenaged children to drive because she is scared for them to be on the road.

*Second*, Douglas's moral culpability—his blameworthiness for the offense—was high. *See Bolar v. State*, 625 S.W.3d 659, 666 (Tex. App.—Fort Worth 2021, no pet.). "In analyzing a defendant's culpability, we consider factors such as the defendant's age at the time of the offense, his motive and intent to commit the crime, his role as the primary actor or as a party to the offense, and his acceptance of responsibility." *Id.* The record shows that Douglas—who was the sole actor to the offense and was fifty-seven years old at the time of its occurrence—not only drove dangerously, causing a serious accident that resulted in Garst's death, but also made conscious choices to drive away from the scene of the crash without providing his information to authorities (or to anyone), to drive home instead of to a police station, and to

8

attempt to hide evidence of his involvement in the accident by using a large trash can and a carpet to obscure the damage to his vehicle. Further, one witness who observed Douglas shortly after the collision testified that he appeared intoxicated, and the presentence investigation report reflects that Douglas was "under the influence of drugs or alcohol" at the time of the offense.

Douglas has also failed to fully accept responsibility for his offense. Although he ultimately acknowledged that he had been involved in the crash, he only did so after Trooper Lewis had traced his license plate number to his residence and had observed—despite Douglas's concealment efforts—the damage to his vehicle. Moreover, at the punishment hearing, Douglas failed to take responsibility for causing the crash and attempted to downplay his culpability for leaving the scene. Despite multiple eyewitnesses' having described how Douglas's dangerous driving had caused the accident, Douglas testified that he did not know "whose fault [the collision] was" and that he "didn't think that [he] was the cause" of the crash. He claimed that he had sped away from the accident scene because he had not wanted to "get hit from behind" and stated his belief that he "didn't really have to" stop and render aid because there had been "plenty of people attending" to the injured motorist.

*Third*, Douglas has an extensive criminal history. The State presented evidence that he had multiple prior felony convictions, including one for aggravated assault and two for possessing methamphetamine. In addition to these felony convictions, Douglas has been convicted of myriad misdemeanor offenses. Douglas conceded

9

that he had been placed on probation twice before and had failed to complete it each time.

Taking all of these factors together and affording proper deference to the legislature and the trial court to create and assess Douglas's punishment, we cannot say that Douglas's twenty-year sentence, which is within the statutory range for his offense,[4] gives rise to an inference of disproportionality.[5]  Accordingly, we overrule Douglas's second issue.

### III.  CONCLUSION

Having overruled both of Douglas's issues, we affirm the trial court's judgment.

/s/ Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  August 22, 2024

---

[4]*See supra* note 3.

[5]Because Jackson's disproportionality argument does not pass the threshold test, we need not compare his sentences to others for the same offenses in Texas and elsewhere.  *See Bolar*, 625 S.W.3d at 666; *see also Nunnally v. State*, No. 03-19-00807-CR, 2021 WL 4995502, at *5 (Tex. App.—Austin Oct. 2, 2021, no pet.) (mem. op., not designated for publication).

10