

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-24-00396-CR

———————————————————

KAILAND RUSHTON, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from Criminal District Court No. 2
Tarrant County, Texas
Trial Court No. 1763059

---

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

Appellant Kailand Rushton appeals two forty-year sentences for two counts of aggravated robbery as cruel and unusual punishment and disproportionate to the severity of his crime. We affirm.

## I. Background

Rushton has had extensive contact with the criminal justice system since age eleven. The trial court heard evidence that Rushton's background includes neglectful parenting, early exposure to violence and drug abuse, and mental-health issues. As a juvenile, Rushton was adjudicated delinquent for two robberies and was arrested for several other offenses. However, before this case, he had never been convicted of a felony as an adult.

On the evening of January 6, 2023, Rushton—then seventeen years old—and another individual, Donnie Verrett, went to the private residence of an eighty-three-year-old woman in the neighborhood where Rushton lived. Rushton grabbed the homeowner by the throat and pulled her out of her residence, forcefully entering the home to seek valuables. Rushton and Verrett then traveled to another home in the same neighborhood and kicked and punched a disabled woman as she got out of her car in her driveway. They left her seriously injured and stole her sole source of transportation, her Kia Sorento. Rushton and Verrett fled from Fort Worth Police Department officers at a high rate of speed in the stolen vehicle. Both were apprehended after Verrett, who was driving, crashed the car.

2

Rushton was charged with two aggravated robberies and, without a plea bargain, pleaded guilty to each one. After accepting the pleas and hearing evidence, the trial court assessed Rushton's punishment for both counts at confinement for forty years, to be served concurrently. Rushton appeals both sentences, raising in a single issue his disproportionality complaint.

## II. Applicable Law

"The Eighth Amendment—made applicable to the states through the Fourteenth Amendment—prohibits the imposition of 'cruel and unusual punishments.'" *Bolar v. State*, 625 S.W.3d 659, 665 (Tex. App.—Fort Worth 2021, no pet.) (first citing U.S. Const. amends. VIII, XIV; then citing *Graham v. Florida*, 560 U.S. 48, 58–60, 130 S. Ct. 2011, 2021–22 (2010); and then citing *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016)). A sentence within the statutory limits generally is not excessive, cruel, or unusual. *Id.* (citing *Simpson*, 488 S.W.3d at 323); *Dale v. State*, 170 S.W.3d 797, 799 (Tex. App.—Fort Worth 2005, no pet.) (first citing *Jordan v. State*, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973); and then citing *Alvarez v. State*, 63 S.W.3d 578, 580 (Tex. App.—Fort Worth 2001, no pet.)). Consequently, a trial court has "essentially 'unfettered'" discretion to impose any sentence within the prescribed statutory range. *Ex parte Chavez*, 213 S.W.3d 320, 323 (Tex. Crim. App. 2006) (quoting *Miller-El v. State*, 782 S.W.2d 892, 895 (Tex. Crim. App. 1990)). Practically, this means that "any sentence within the statutory limits is virtually 'unassailable' on appeal provided that it is based upon the sentencer's informed

normative judgment." *Id.* at 324; *Andrade v. State*, Nos. 02-23-00212-CR, 02-23-00213-CR, 02-23-00214-CR, 2024 WL 4631299, at *4 (Tex. App.—Fort Worth Oct. 31, 2024, no pet.) (mem. op., not designated for publication).

"[A] narrow exception to this general rule exists: the Eighth Amendment prohibits noncapital punishment within the statutory limits if the sentence is grossly disproportionate to the offense." *Bolar*, 625 S.W.3d at 665 (first citing *Graham*, 560 U.S. at 59–60, 130 S. Ct. at 2021–22; then citing *Harmelin v. Michigan*, 501 U.S. 957, 997–1001, 111 S. Ct. 2680, 2702–05 (1991) (Kennedy, J., concurring in part and concurring in judgment); and then citing *Simpson*, 488 S.W.3d at 322). But this exception applies "'only in the exceedingly rare or extreme case.'" *Id.* (first quoting *Harmelin*, 501 U.S. at 998–1001, 111 S. Ct. at 2703–05 (Kennedy, J., concurring in part and concurring in judgment); and then quoting *Simpson*, 488 S.W.3d at 322–23).

In determining if a noncapital sentence qualifies for this exception, we begin with a threshold analysis comparing the gravity of the offense to the severity of the sentence. *Graham*, 560 U.S. at 60, 130 S. Ct. at 2022; *Simpson*, 488 S.W.3d at 323; *Chavez*, 213 S.W.3d at 323–24. To assess the offense's gravity, we consider the defendant's culpability and prior adjudicated and unadjudicated crimes, along with the harm caused or threatened to the victim and to society. *See Simpson*, 488 S.W.3d at 323. We then weigh these factors against the defendant's sentence, using precedent as guidance for the constitutional limits of proportional severity. *Bolar*, 625 S.W.3d at 666

(first citing *Hutto v. Davis*, 454 U.S. 370, 374–75, 102 S. Ct. 703, 706 (1982) (per curiam); and then citing *McGruder v. Puckett*, 954 F.2d at 313, 317 (5th Cir. 1992)).

Only if this threshold analysis indicates gross disproportionality[1] do we engage in steps two and three by comparing the defendant's sentence with those received by similar offenders in this jurisdiction and with those imposed for the same crime in other jurisdictions. *Simpson*, 488 S.W.3d at 323; *Andrade*, 2024 WL 4631299, at *5; *Bolar*, 625 S.W.3d at 666.

### III. Analysis

#### A. Gravity of Offense

Rushton's case does not pass the threshold test.

Rushton's actions showed a clear harm and threat to the community at large as well as to the individual complainants. Specifically, he menaced the neighborhood he resided in, committing similar, successive, premeditated robberies.[2] In doing so, he

---

[1]Rushton argues that we should factor his mental-health history into the analysis (a "trauma-informed approach"), arguing that "[p]unishing mental illness needs to be more intensely scrutinized under the prism of the Eighth Amendment protections against cruel and unusual punishment," but acknowledging that "[t]o date, our Supreme Court has not done so." Without binding authority to the contrary, we may not engage in a different disproportionality test. *See, e.g.*, *Wiley v. State*, 112 S.W.3d 173, 175 (Tex. App.—Fort Worth 2003, pet. ref'd).

[2]Rushton was known in the neighborhood. He had played basketball at the disabled complainant's home, and she had shared food with him. Immediately before he committed the first aggravated robbery, he and Verrett had attempted to break into a different home in the neighborhood—another place where he had been allowed to play basketball with friends—and were spotted by one of the homeowners on the home's security-camera feed. Rushton and Verrett left that home when no one

committed physical violence against elderly and disabled members of the community who could not effectively resist.

Rushton's first victim testified that she no longer sleeps well and does not feel safe walking in her own neighborhood. Rushton's second victim was severely injured, and her only transportation was totaled. In fleeing from the second robbery, Rushton and Verrett placed the community and law enforcement in significant threat of harm by leading police on a chase in a stolen vehicle and then causing a collision with another vehicle.

Furthermore, Rushton pleaded guilty to both charges of aggravated robbery, establishing his culpability. *See Jackson v. State*, Nos. 02-23-00156-CR, 02-23-00157-CR 2023 WL 8267693, at *2 (Tex. App.—Fort Worth Nov. 30, 2023, no pet.) (mem. op., not designated for publication) (relying on *Saravia v. State*, No. 02-22-00138-CR, 2023 WL 2805902, at *4 (Tex. App.—Fort Worth Apr. 6, 2023, no pet.) (mem. op., not designated for publication); *Wade v. State*, No. 02-21-00206-CR, 2023 WL 1859797, at *3 (Tex. App.—Fort Worth Feb. 9, 2023, no pet.) (mem. op., not designated for publication)). He also clearly expressed that he "knew what [he] was doing at the time [of the crime]" and that he "knew what [he] was doing was wrong." This clear expression supports the culpability established by Rushton's plea.

---

answered the door. As a juvenile, Rushton had committed attempted robbery against the other homeowner of the same home. That person testified that Rushton is dangerous.

6

Finally, like the appellant in *Jackson*, while Rushton does not have any prior felony convictions as an adult, he was adjudicated delinquent as a juvenile for conduct that is a felony—robbery. 2023 WL 8267693, at *2. Rushton was placed on community supervision for that conduct. He also pleaded guilty as an adult to misdemeanor assault of his mother, which he committed while on community supervision for the robberies he had committed as a juvenile. From the age of eleven, his juvenile history includes other unadjudicated crimes: aggravated sexual assault of a family member,[3] assault against a public servant,[4] and interference with emergency assistance. Thus, the record shows that Rushton has persisted in a clear, escalating pattern of criminal conduct from a young age and that diversion and restraint from stringent prosecution has not been an effective deterrent. The trial court could have considered the fact that Rushton had not yet turned eighteen when he committed the offenses on appeal as more indicative of their high gravity, especially in light of his history.

## B. Severity of Sentence

Rushton's convictions were for first-degree felonies, each with a punishment range of five to ninety-nine years' confinement, or confinement for life. Tex. Penal Code Ann. §§ 12.32(a), 29.03(b). Forty years' confinement is well within the statutory

---

[3]This case was "dismissed '[i]n the interest of justice.'" Although Rushton denied that he had committed this crime, the complainant's allegations were set forth in the presentence investigation report prepared for the trial court.

[4]This case was dismissed according to "prosecutorial discretion."

range of punishment. As the trial court in *Bolar* noted in the context of another forty-year sentence, "40 is a lot closer to 25 than it is to 99."[5] 625 S.W.3d at 670–71. Similarly, a forty-year sentence is closer to the lower, five-year minimum punishment than it is to the maximum.

Weighing the lower to mid-range length of the sentence against the crimes' high gravity, we conclude that the two concurrent forty-year sentences do not give rise to an inference of disproportionality. *See Moreno v. State*, No. 11-24-00032-CR, 2025 WL 1458904, at *10 (Tex. App.—Eastland May 22, 2025, no pet.) (mem. op., not designated for publication); *Andrade*, 2024 WL 4631299, at *6; *Jackson*, 2023 WL 8267693, at *2. Because Rushton's sentence does not pass the threshold test, we do not need to engage in the secondary examination of punishments for similar crimes in the same jurisdiction.[6] *See Jackson*, 2023 WL 8267693, at *2; *Bolar*, 625 S.W.3d at 674. Thus, we overrule Rushton's sole issue.

---

[5]Bolar was subject to an enhanced sentence with a higher minimum punishment. *Bolar*, 625 S.W.3d at 670; *see also* Tex. Penal Code Ann. § 12.42(d).

[6]Regardless, we note that sister courts have upheld similar or lengthier sentences for crimes like Rushton's. *See, e.g.*, *Jacoby v. State*, 227 S.W.3d 128, 132–33 (Tex. App.—Houston [1st. Dist.] 2006, pet. ref'd) (holding that two forty-year sentences for aggravated robbery with a deadly weapon by a twenty-two year old who burglarized two homes and beat one of the inhabitants with a firearm was not cruel and unusual punishment because the sentence was well within the statutory range and because of the crime's premeditated and severe nature); *see also Remerowski v. State*, No. 03-02-00317-CR, 2003 WL 21241330, at *1,4 (Tex. App.—Austin 2003, pet. ref'd) (mem. op., not designated for publication) (holding that a fifty-year sentence for aggravated robbery by a defendant with no prior felony convictions and suffering from bipolar disorder was not disproportionate or cruel and unusual); *Jackson v. State*,

## IV. Conclusion

Having overruled Rushton's sole issue, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: July 31, 2025

---

69 S.W.3d 657, 659–60 (Tex. App.—Texarkana 2002, no pet.) (holding that a fifty-five-year sentence from an unnegotiated plea to aggravated robbery was not disproportionate or cruel and unusual because the sentence was well within the statutory range); *Belton v. State*, 900 S.W.2d 886, 899 (Tex. App.—El Paso 1995, pet. ref'd) (affirming sixty and seventy-five year sentences for two counts of aggravated robbery when defendant shot two of the residents and killed another and holding that sentences were not disproportionate or cruel and unusual considering the severity of the crime and the fact that the punishments were well within the statutory range); *cf. Fluellen v. State*, 71 S.W.3d 870, 873 (Tex. App.—Texarkana 2002, pet. ref'd) (noting that a fifty-year sentence for aggravated robbery was near the midpoint of the statutory punishment range but not addressing the disproportionate-sentence argument because objection was not preserved).